## DELAWARE AND HUDSON COMPANY *v.* ALBANY AND SUSQUEHANNA RAILROAD COMPANY.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 416. Argued February 23, 24, 1909.—Decided May 3, 1909.

Equity rule No. 94, which is intended to secure the Federal courts from imposition upon their jurisdiction, recognizes the right of the corporate directory to corporate control, and expresses primarily the conditions which must precede the right of the stockholders to protect the corporation in cases where the directory is derelict; but the requirements of the rule may be dispensed with where they do not apply by reason of antagonism between the directory and the corporate interest.

Equity rule No. 94 is intended to have a practical application and it does not apply where the corporate interests can only be protected by a suit, which, if successful, would be detrimental to all the directors in other capacities.

Where, as in this case, stockholders of a lessor corporation sued, for its benefit, the lessee corporation, the directors of the two corporations being almost identical and the lessee corporation also owning, or

holding the voting power, of sufficient stock of the lessee corporation to control a stockholders' meeting, the fact that the stockholders bringing the suit made no demand for relief upon the board of directors nor any effort to obtain relief at a stockholders' meeting does not prevent them from maintaining the bill.

*Quære*, and not decided, whether stockholders have power to compel directors to institute suits to which the latter are opposed.

THE facts, and the questions certified, are stated in the opinion.

*Mr. James M. Beck*, with whom *Mr. Alfred Opdyke* was on the brief, for the Delaware & Hudson Company:

Before a shareholder "is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain within the corporation itself the redress of his grievances or action in conformity to his wishes. He must make an earnest, not a simulated, effort with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the court." *Hawes* v. *Oakland,* 104 U. S. 450; *Foss* v. *Harbottle,* 2 Hare, 461; *Macdougall* v. *Gardiner,* 1 Chancery Div. 13.

The stockholder of a corporation cannot on his individual responsibility commence an action for the benefit of the corporation against another corporation, without first applying to the managing body of his corporation to do so, and the fact that a majority of such managing body are also officers, directors, or employés of the corporation against which the suit is sought to be brought will not, in the absence of fraud, excuse the failure of the stockholder to make such application.

The only question which seems open to discussion is whether the mere fact that a majority of such board were also "officers, directors or employés" of the company sought to be sued, and that some of them had only a nominal stock interest in the Susquehanna Company, in itself and in the absence of any

circumstances of fraud, so conclusively demonstrates the futility of such application as to excuse it. This conclusion could be justified only on the assumption that there is a conclusive presumption of law that the directors of a corporation will not institute a suit against another corporation, with which a majority are identified either as "officers, directors or employés."

The vice of the appellees' position is that they gratuitously assume that the directors of the Susquehanna Company, men of recognized standing and probity in the business world, would have been faithless to the trust reposed in them, and this solely for the reason that a majority were, as officers, directors or employés, also identified with the Delaware Company.

Certainly the presumption that directors will fully discharge their duties to all the stockholders should not be overborne at least until they have first, refused, upon demand, to bring suit under conditions that will fully safeguard the interests of the stockholders, and until such demand and refusal the ordinary presumption of fidelity to a trust, as anounced by this court, still remains. *Hawes* v. *Oakland,* 104 U. S. 450; *Detroit* v. *Dean,* 106 U. S. 537; *Dimpfell* v. *Ohio Ry. Co.,* 110 U. S. 209; *Quincy* v. *Steel,* 120 U. S. 241; *Taylor* v. *Holmes,* 127 U. S. 489.

This rule is laid down in *Corbus* v. *Alaska Co.,* 187 U. S. 455, and also in *Dodge* v. *Woolsey,* 18 How. 331; *Greenwood* v. *Freight Co.,* 105 U. S. 13; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429. *Doctor* v. *Harrington,* 196 U. S. 579, relied upon by appellees, was exceptional and bears no resemblance to this case. And *Chicago* v. *Mills,* 204 U. S. 321, and *Ex parte Young,* 209 U. S. 123, 143, can also be distinguished.

Rule 94 itself assumes that the directors are presumed to act honestly and according to their best judgment for the interests of all, and this presumption cannot be overborne by the mere assertion of futility or by the pleader's license in the use of adjectives or adverbs. The fraud charged and proven

must be actual and not constructive. "Epithets do not make out fraud." *Kent* v. *Canal Co.*, 144 U. S. 91; *Fogg* v. *Blair*, 139 U. S. 127.

In the following cases in state courts the bill was held not to be maintainable. *Wolf* v. *R. R. Co.*, 195 Pa. St. 91, 95; *Siegman* v. *Maloney*, 65 N. J. Eq. 372; *Brewer* v. *Boston Theatre*, 104 Massachusetts, 378; *Dunphy* v. *Traveller Assn.*, 146 Massachusetts, 495; *O'Connor* v. *Virginia*, 184 N. Y. 46, 53.

If the complainants were excused under the facts certified from making any preliminary demand upon the directors, they nevertheless must show, in order to maintain their suit, that they could not have secured corporate action by an appeal to the stockholders of the Susquehanna Company. *Hawes* v. *Oakland*, 104 U. S. 450; *Foss* v. *Harbottle*, 2 Hare, 461; *Huntingdon* v. *Palmer*, 104 U. S. 482; *Quincy* v. *Steel*, 120 U. S. 241; *Chicago* v. *Mills*, 204 U. S. 321; *Doctor* v. *Harrington*, 196 U. S. 579.

*Mr. E. Parmalee Prentice*, with whom *Mr. George Welwood Murray* and *Mr. Charles P. Howland* were on the brief, for The Albany and Susquehanna Railroad Company *et al:*

Complainants are entitled under the facts stated by the Circuit Court of Appeals to sue as stockholders in the Susquehanna Company asserting rights due that corporation. They were not required before instituting this suit to demand relief from the directors of the Susquehanna Company. The present case is not within the purpose of Equity Rule 94 which is to prevent the maintenance of suits in Federal courts by collusion between complainants and the defendant corporation whose rights they assert. *Hawes* v. *Oakland*, 104 U. S. 450; *Citizens' Trust Co.* v. *Illinois Central R. Co.*, 205 U. S. 46, 47; *Doctor* v. *Harrington*, 196 U. S. 579, 588; *Chicago* v. *Mills*, 204 U. S. 321; *Young* v. *Mining Co.*, 71 Fed. Rep. 810; *Eldred* v. *American &c. Co.*, 99 Fed. Rep. 168.

The certificate shows that this suit is not collusive.

The present case is not within the requirements of Equity

Rule 94, as to demand upon directors. The bill shows under oath that directors were hostile, that demand upon them would be idle and nugatory.

Equity will not permit double directors, by contracts made with themselves in other capacities, to bind shareholders or the corporation. *Wardell* v. *Railroad Co.,* 103 U. S. 651; *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 587.

A court will not entertain litigation in which both sides are controlled by one *dominus litis.* *South Spring Gold Co.* v. *Amador Gold Co.,* 145 U. S. 300; *Mills* v. *Green,* 159 U. S. 651, 654; *East Tennessee &c. Co.* v. *Telegraph Co.,* 125 U. S. 695; *Hatfield* v. *King,* 184 U. S. 162. In fact parties who bring such litigation without disclosing the relationship of parties are guilty of punishable contempt of court. *Lord* v. *Veazie,* 8 How. 251; *Little* v. *Bowers,* 134 U. S. 547, 557; *Hatfield* v. *King,* 184 U. S. 162.

When directors are under adverse control stockholders may sue without demand for relief from a hostile board. *Citizens' Trust Co.* v. *Illinois Central Railroad,* 205 U. S. 46; *Doctor* v. *Harrington,* 196 U. S. 579; *Corbus* v. *Gold Mining Co.,* 187 U. S. 455; *Heath* v. *Erie Railway Co.,* 8 Blatch. 347, 409; *Bill* v. *Telegraph Co.,* 16 Fed. Rep. 14, 19; *Columbia Dredging Co.* v. *Washed Bar Sand Dredging Co.,* 136 Fed. Rep. 710; *Bigelow* v. *Calumet & Hecla Mining Co.,* 155 Fed. Rep. 869; *Dickinson* v. *Traction Co.,* 114 Fed. Rep. 232; *Eldred* v. *American &c. Co.,* 99 Fed. Rep. 168; *Berwind* v. *Canadian Pac. Ry. Co.,* 98 Fed. Rep. 158; *Ball* v. *Rutland R. Co.,* 93 Fed. Rep. 513; *Weir* v. *Bay State Gas Co.,* 91 Fed. Rep. 940; *Rogers* v. *Nashville &c. Ry. Co.,* 91 Fed. Rep. 299; *De Neufville* v. *Railroad Co.,* 81 Fed. Rep. 10.

Complainants were not required before instituting this suit to demand relief at a meeting of Susquehanna stockholders. See *Brewer* v. *Boston Theatre,* 104 Massachusetts, 378, 387.

Demand on stockholders was not necessary in this case because under the Susquehanna charter stockholders could not grant relief. Laws, New York, 1850, Ch. 140.

In all litigation involving the action of the corporation they (the directors) are its representatives in court. Stockholders cannot control or interfere with their management. *Railway Co. v. Alling*, 99 U. S. 463, 472; *Pullman Co. v. Missouri Pacific R. Co.*, 115 U. S. 587; *Beveridge v. New York &c. R. Co.*, 112 N. Y. 1, 21, 23; *Robinson v. Smith*, 3 Paige, Ch. 222; *McCullough v. Moss*, 5 Denio, 567; *Conro v. Port Henry Iron Co.*, 12 Barb. 27; Morawetz on Corps., 2d ed., §§ 283, 510; Cook on Corps., 5th ed., §§ 684, 750.

Even if stockholders could by resolution require directors to institute litigation against the Delaware Company, they could not oust directors from office, before expiration of their terms. Laws, New York, Act of 1850, ch. 140, § 5.

No court would entertain a suit against the Delaware Company conducted by the Delaware administration of the Susquehanna Company. *South Spring Gold Co. v. Amador Gold Co.*, 145 U. S. 300; *Mills v. Green*, 159 U. S. 651; *East Tennessee &c. Co. v. Telegraph Co.*, 125 U. S. 695.

Suits are regularly maintained in Federal courts without demand upon stockholders for a resolution directing litigation. *Ex parte Young*, 209 U. S. 123; *Cotting v. Kansas City Stock Yards Co.*, 183 U. S. 79; *Dinsmore v. Southern Express Co.*, 183 U. S. 115; *Smyth v. Ames*, 169 U. S. 466; *Pollock v. Farmers' &c. Trust Co.*, 157 U. S. 429; *Greenwood v. Freight Co.*, 105 U. S. 13; *Schultz v. Highland Gold Mines Co.*, 158 Fed. Rep. 337; *Perkins v. Northern Pacific Co.*, 155 Fed. Rep. 445; *Monmouth Investing Co. v. Means*, 151 Fed. Rep. 159; *Weir v. Bay State Gas Co.*, 91 Fed. Rep. 940; *Ball v. Rutland Railroad Co.*, 93 Fed. Rep. 513; *Dinsmore v. Southern Express Co.*, 92 Fed. Rep. 714.

No case was ever dismissed from a Federal court for want of an application to stockholders for a resolution directing litigation on behalf of the corporation.

There was nothing to submit to stockholders.

When a stockholders' vote makes a voidable act valid or void, it acts upon something which directors have done. In

this case directors have done nothing and stockholders cannot control their course.

Stockholders cannot, by anything short of a unanimous vote, authorize or ratify gifts of corporate property.  *Brewer* v. *Boston Theatre,* 104 Massachusetts, 378; *Jackson* v. *Ludeling,* 21 Wall. 616; *Ervin* v. *Oregon R. & N. Co.,* 27 Fed. Rep. 625, 631; *Mumford* v. *Ecuador Development Co.,* 111 Fed. Rep. 639; *Menier* v. *Telegraph Works,* L. R. 9 Ch. App. 350; *Gamble* v. *Queens County Water Co.,* 123 N. Y. 91; *Farmers' &c. Trust Co.* v. *New York &c. R. Co.,* 150 N. Y. 410.

Complainants desiring institution of a law-suit were not required by Rule 94 to ask for election of a new board of directors.

When this suit was instituted the Delaware Company controlled the Susquehanna stock vote.

Stockholders whose corporation is in adverse control are entitled to protection by injunction.

Complainants are entitled to maintain this bill by reason of their direct relations to both defendant corporations.  Rule 94 does not apply to this case.

The Delaware Company has not only agreed with the lessor corporation by covenant in the lease to pay rent for the Susquehanna property, but by the guarantee on stock certificates has also agreed with individual stockholders that payment of this rent shall be made by dividing the corporate income as provided in the lease.

The Delaware Company has, therefore, in respect to corporate rights of the Susquehanna Company, entered into privity of contract with every Susquehanna stockholder, concerning division of the entire rent.  *Hawes* v. *Oakland,* 104 U. S. 450.

Stockholders' suits cannot be at law, for the guarantees are part of the entire covenant to pay the entire rent arising from a single demise of corporate property.

An action to divide corporate income among stockholders must be brought in equity,—otherwise the lessee's right of offset would be defeated and unequal division of income made among stockholders.  *Barr* v. *New York &c. Co.,* 96 N. Y. 444.

Mr. Justice McKenna delivered the opinion of the court.

The certificate of the court is as follows:

"This cause comes here upon appeal from a final decree of the Circuit Court, Southern District of New York, which directs that the defendant Delaware and Hudson Company (hereinafter called the Delaware Company) pay to the defendant the Albany and Susquehanna Railroad Company (hereinafter called the Susquehanna Company) the amount of $1,107,923.24.

"The case was fully argued and submitted on briefs. It thereupon developed that there was a question presented whether the bill could be maintained under the ninety-fourth equity rule. That question is a preliminary one, it has been held to be jurisdictional in character (*City of Chicago* v. *Mills,* 204 U. S. 321; *Doctor* v. *Harrington,* 196 U. S. 579), and this court desires the instruction of the Supreme Court for its proper decision.

### Statement of Facts.

"The facts upon which the question arises are as follows:

"The defendant corporations are both citizens of the State of New York; the complainants are citizens of the States of Connecticut and Rhode Island. The bill was brought to obtain an accounting for various sums of money which it was alleged became due at intervals during a series of years from the Delaware Company to the Susquehanna Company as rental or in the nature of rental under a lease made in 1870. For the convenience of all a copy of the pleadings is hereto annexed, marked Exhibit 'A,' which may be referred to for a more detailed statement of the cause of action. The bill does not 'set forth with particularity the efforts of the plaintiffs to secure such action as they desire on the part of the managing directors or trustees.' Nor did the proofs show any such efforts. Nor does the bill set forth any efforts to secure 'such action on the part of the shareholders.' Nor did the proofs show any such efforts. Nor did the bill set forth, or the proofs show, 'the

causes of their failure to obtain such action' otherwise than is hereinafter disclosed.

"The complaint was filed on June 12, 1906. The Susquehanna Company was organized under the act of April 2, 1850, which provides that 'there shall be a board of thirteen directors . . . to manage its affairs,' and for many years before this suit was brought a majority of the board of directors of the Susquehanna Company consisted of persons who were officers, directors or employés of the Delaware Company. At the time this suit was instituted, the directors and officers of the Susquehanna Company, the dates of their election as such, and their relations to the Delaware Company with dates of election were as shown on the following statement:

| Names of directors of Susquehanna Company and dates of election as directors and officers. | Position in Delaware and Hudson Company and dates. |
| --- | --- |
| Robert M. Olyphant, 1878 | Director since 1872<br>President from 1884 to 1903<br>Chairman of the Board since 1903 |
| George I. Wilber, 1883 | Director since 1901 |
| David Wilcox, 1894 (Vice President, May 9, 1906) | General counsel 1894 to 1903<br>Director since 1899<br>President since 1903 |
| R. Suydam Grant, 1901 | Director since 1886 |
| Charles A. Peabody, 1902 | Director since 1902 |
| William S. Opdyke, 1903 | General counsel since 1903<br>Director since 1905 |
| Abel I. Culver, 1903 | A Vice President since 1903 |
| Charles A. Walker, 1892 | Treasurer 1892 |
| Robert Olyphant, 1887 (President since 1889) | Son of Robert M. Olyphant |
| William L. M. Phelps, 1873 (Secretary since 1870) | Secretary of the Albany and Susquehanna Company, elected by the board of directors. |
| Robert C. Pruyn, 1890 | Nominees of the Delaware Company as stated in the Delaware Company's answer. |
| James H. Manning, 1890 | |

"Of these, Robert M. Olyphant, R. Suydam Grant, Charles A. Peabody, William S. Opdyke, Abel I. Culver and Robert C. Pruyn at the time this suit was begun did not own or hold in their own right any shares of stock in the Susquehanna Company, but shares of stock of that company owned by the Delaware Company were transferred to each of them on the books of the Susquehanna Company by the Delaware Company for the purpose of qualifying them as such directors. Charles A. Walker owned five shares of Susquehanna stock from 1901 to 1906; it does not appear that he owned any stock in the Susquehanna Company during the year 1906.

"So far as appears from anything shown in this record none of the directors or officers of the Delaware Company ever, before or after the bringing of this suit, treated the claim therein set forth otherwise than as one of doubtful validity the payment of which was to be resisted.

"On June 12, 1906, and for thirty years prior thereto, the capital stock of the Susquehanna Company had been fixed at and limited to 35,000 shares. Of this capital stock on June 12th, 1906, the Delaware Company owned 4500 shares and its directors or officers owned or controlled 4340 shares; the complainants owned 1312 shares and a so-called Protective Committee who from and after December, 1905, had been opposing the administration of the Delaware Company upon the questions involved in this bill controlled 6688 shares. The entire 35,000 shares were held by 546 different persons, of whom 423 owned 50 shares or less, and of whom 383 resided in the State of New York.

"An annual meeting of the Susquehanna Company was held subsequent to the beginning of this suit, on October 16, 1906. At that meeting the nominees of the protective committee were elected, receiving 15,501 ballots, the nominees of the former management receiving 15,441 ballots. About two weeks before such annual meeting the Susquehanna Company being then controlled by the directorate above named, filed a demurrer to the bill which is hereto annexed as Exhibit 'B.' Copies of

such demurrer were sent by stockholders opposed to the existing control to all stockholders and thereafter and before the meeting proxies for several thousand shares were received by the persons who voted for the nominees then elected.

### Questions Certified.

"Upon the facts above set forth the questions of law concerning which this court desires the instruction of the Supreme Court are:

"First. 'Does the fact that before institution of this suit complainants made no demand for relief upon the Board of Directors of the Susquehanna Company prevent them from maintaining this bill?'

"Second. 'Does the fact that before institution of this suit complainants made no effort to obtain relief at a stockholders' meeting prevent them from maintaining this bill?'"

The questions in connection with the ninety-fourth equity rule present the issue in the case. The rule is as follows:

"94. Every bill brought by one or more stockholders in a corporation against the corporation and other parties founded upon the rights which may properly be asserted by the corporation must be verified by oath, and must contain an allegation that the complainant was a shareholder at the time of the transaction of which he complains, or that his share had devolved upon him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not have otherwise cognizance. *It must also set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action.*"

Do the facts show a compliance with the rule, or rather that part of it which we have expressed in italics? The other parts of it are not involved.

It is the contention of appellant that the averments in the bill as exhibited in the certificate do not satisfy either the

language of the rule or its substance. The argument is that
(1) a shareholder, as a condition of his suit, must show that he
has exhausted all the means within his reach to obtain within
the corporation itself the redress of his grievances, that his
efforts must be earnest, not simulated, and this must be made
apparent to the court; (2) his failure to apply to the managing
body of the corporation will not, in the absence of fraud, be
excused by the fact that such managing body are also officers,
directors or employés of the corporation against which the
suit is brought; (3) if the facts of this case excused from a
preliminary demand upon the directors, the complainants
were required to show "that they could not have secured
appropriate action by an appeal to the stockholders of the
Susquehanna Company." The appellees counter these con-
tentions by asserting that (1) the case is not within the require-
ments of Rule 94. "The bill shows, under oath," it is said,
"that the directors were hostile, and that demands upon them
would be 'idle and nugatory.' . . ." (2) Complainants
(appellees here) were not required to appeal to the stockholders
of the Susquehanna Company because (a) the stockholders,
under the charter of the company, could not grant relief;
(b) even if such power existed, the stockholders "could not
oust directors from office before expiration of their terms."
And it is further contended that at the time the suit was in-
stituted "the Delaware Company controlled the stock vote of
the Susquehanna Company."

   These opposing contentions present a not unusual case where
the rule or principle of law is clear enough, but its application to
a particular case is not so clear, and there is a contest of plausi-
ble constructions between which it is not always easy to decide.
The purpose of Rule No. 94 hardly needs explanation. It is
intended to secure the Federal courts from imposition upon
their jurisdiction and recognizes the right of the corporate
directory to corporate control; in other words, to make the
corporation paramount, even when its rights are to be pro-
tected or sought through litigation. Cases in this court have

indicated such right. But the directory may be derelict and the interests of stockholders put in peril, and a case hence arises in which the right of protecting the corporation accrues to them. Rule 94 expresses primarily the conditions which must precede. the exercise of such right, but emergencies may arise in which the antagonism between the directory and the corporate interest may be unmistakable, and the requirements of the rule may be dispensed with, or, it is more accurate to say, do not apply. There are cases which illustrate these contingencies. As a typical case of the first kind, that is, which enforces the doctrine that the rights of the corporation must be asserted through the corporation, *Hawes* v. *Oakland*, 104 U. S. 450, is cited. In that case *Dodge* v. *Woolsey*, 18 How. 331, was declared to be the leading case on the subject in this country, and, examining the latter case, it was said that it did not establish, nor was it intended to establish, a doctrine different in any material respect from that found in the other American cases and the English cases. And the doctrine was said to be that to enable a stockholder in a corporation to sustain in a court of equity a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as a foundation for the suit some action or threatened action of the managing board of directors which is beyond their authority; a fraudulent transaction completed or contemplated which will result in serious injury to the corporation or stockholders; where the board of directors, or a majority of them, are acting for their own interest in a manner destructive of the corporation itself or of the rights of other stockholders; or where a majority of the stockholders themselves are oppressively and illegally pursuing a course inimical to the corporation or to the rights of the other stockholders. The court expressed the possibility that other cases might arise, but said "the foregoing may be regarded as an outline of the principles which govern this class of cases."

Determined by the principles enumerated, the court affirmed a decree sustaining a demurrer to a bill by a stockholder of the

Contra Costa Waterworks Company, filed in behalf of himself and other stockholders against the company, its directors and, the city of Oakland, to enjoin the city from taking, and the directors from permitting it to take, water from the works of the company without compensation. The bill alleged a request of the directors to take proceedings, and that they declined to do so. The bill also alleged injury to the corporation, diminution of dividends of the complainant and other stockholders, and a decrease of the value of their stock. Appellant adduces, as repeating and illustrating the doctrine of *Hawes* v. *Oakland,* the following cases: *Dimpfell* v. *Ohio & Mississippi Ry. Co.,* 110 U. S. 209; *Quincy* v. *Steel,* 120 U. S. 241; *Taylor* v. *Holmes,* 127 U. S. 489; *Corbus* v. *Alaska Treadwell Gold Mining Co.,* 187 U. S. 455. The latter case is quoted by appellant as putting unmistakable emphasis on Rule 94, and that the facts of the case at bar do not satisfy its requirements. The object of the suit was to enjoin the board of directors of the corporation from paying a license tax levied upon the corporation under the provisions of an act of Congress. Corbus, the complainant in the suit, was a stockholder of the corporation, and alleged, as the reason of the suit by him, that he was unable to request the directors of the company to refuse to pay the tax or apply for the license required by reason of their great distance from him, but that he had made such request of the officers of the company residing in Alaska, and that they had refused to comply with the request. Of this allegation the court said that it showed no compliance with Rule 94, and that complainant simply relied on the distance of the directors from where he resided as an excuse for not applying to them. "We are of opinion," it was said, "that the excuse is not sufficient. He should at least have shown some effort. If he had made an effort and obtained no satisfactory result, either by reason of the distance of the directors or by their dilatoriness or unwillingness to act, a different case would have been presented, but to do nothing is not sufficient."

A case sustaining the second proposition which we have

mentioned, to wit, where the circumstances take the cases out of the rule, is *Doctor* v. *Harrington,* 196 U. S. 579. The suit was brought by Doctor and others as stockholders of a corporation called the Sal Sayles Company to set aside a judgment obtained by the Harringtons against that company. The bill alleged that the suit was not collusive; that complainants were unable to obtain redress from the company or "at the hands" of its stockholders. It further alleged that the board of directors of the corporation was "under the absolute control and domination of the defendant, John J. Harrington, and that said Harrington, by reason of having the possession of a majority of the capital stock of said corporation," likewise controlled "the action of the stockholders." It was further alleged that he refused to give any information with regard thereto, and declined to redress the wrongs of which complaint was made, or give complainants any opportunity to lay before the board of directors or the stockholders of the company the facts set forth.

It will be observed, therefore, that there was no compliance with the requirements of Rule 94, as expressed in its letter. The efforts that were made to secure the action of the managing directors or trustees were not "set forth with particularity." Nothing was alleged but the domination of John J. Harrington and his control of the directors. What he did, in what way he exerted control, was not alleged. In other words, the bill seemed to show a case not of compliance with the requirements of Rule 94, but circumstances which excused from such compliance.

Coming to consider the effect of those allegations, we said that Rule 94 contemplates that there may be, and provides for, a suit by the stockholder in a corporation founded on rights which may be properly asserted by the corporation. And we further said that "the ultimate interest of the corporation made defendant may be the same as that of the stockholder made plaintiff, but the corporation may be under a control antagonistic to him and made to act in any way detrimental to his interest. In other words, his interests and the interests of the

VOL. CCXIII—29

corporation may be subservient to some illegal purpose." And we decided that these principles were satisfied by the allegations of the bill and that such antagonism existed between the complainants in the suit and the directors of the corporation that they would "suffer irremediable loss if not permitted to sue." In other words, the complainants were in such a situation by reason of the power which Harrington possessed over those who managed the corporation—directors and stockholders—that appeals to them for action would have been futile. Prior cases were considered, including *Dodge* v. *Woolsey* and *Hawes* v. *Oakland,* and the conclusion reached was pronounced to be in accordance with their doctrine.

Do the facts in the case at bar present the same situation that was passed on in *Doctor* v. *Harrington?* The certificate shows the following facts: The complaint was filed June 12, 1906. The suit was brought to obtain an accounting for various sums of money, which it was alleged became due at intervals during a series of years from the Delaware Company to the Susquehanna Company as rental, or in the nature of rental, under a lease made in 1870. The Susquehanna Company was organized in 1850, and, under the law, its board of directors consisted of thirteen members, a majority of whom for many years before this suit was brought were also "officers, directors or employés of the Delaware Company." Indeed, they served as its president, vice president, treasurer, secretary, directors and general counsel—officers of dominating influence, it must be said. It appears that certain of the persons occupying those offices did not at the time the suit was brought own or hold in their own right any shares of stock in the Susquehanna Company, but shares of stock in that company owned by the Delaware Company were transferred to each of them on the books of the former company by the latter company for the purpose of qualifying them as directors. The number of shares of the capital stock of the Susquehanna Company and how held or owned, and the attitude of the owners thereof to the Delaware Company, appear in the certificate and need not be repeated.

The certificate recites the following: "So far as appears from anything shown in the record none of the directors or officers of the Delaware Company ever before or after the bringing of this suit treated the claim therein set forth otherwise than as one of doubtful validity, the payment of which was to be resisted."

The situation was unique. The company whose interest it was to assert the right to payment and to demand it was under the control or could be influenced by the company whose interest it was to deny indebtedness and resist payment. And though there are allegations in the bill of contrary import, the good faith of the directors need not be questioned. They might notwithstanding be firm in their views—firm to resist appeals against them. Their views seemed to persist through many years. At any rate, a situation was presented fully as formidable to the interest of stockholders in the Susquehanna Company as that presented in the *Harrington case.* And it may be well doubted whether, if the directors of the Susquehanna Company, so being directors of the Delaware Company, and who either from an apathy that endured through many years could discern no right in that company to assert or through conviction of the absence of right, were not the best agents to begin or conduct a litigation of such right. It was certainly natural enough that a stockholder should seek more earnest representatives and consider that the directors "occupied," to use the language of *Dodge* v. *Woolsey,* "antagonistic grounds in respect to the controversy" as to him. The attitude of the directors need not be sinister. It may be sincere. It was so in *Chicago* v. *Mills,* 204 U. S. 321, and *Ex parte Young,* 209 U. S. 123, and other cases. In this case it was certainly determined. It continued until after this suit was brought. Both the Delaware Company and the Susquehanna Company, then under "the administration of the Delaware Company," to quote from the Circuit Court of Appeals, demurred to the bill.

But it is contended that efforts should have been made and alleged to move the corporation to action through a stock-

holders' meeting. In this contention there is again similarity to the *Harrington case*. It was there alleged that Harrington controlled the action of the stockholders "by reason of having possession of a majority" of the capital stock of the corporation. The control in the case at bar, therefore, may not have been as direct as in *Doctor v. Harrington*, but it was practically efficient. The stock of the Susquehanna Company consisted of 35,000 shares, of which the Delaware Company and its directors and officers held 8,840. The complainant and a so-called protective committee, a committee which the certificate states "from and after December, 1905, had been opposing the administration of the Delaware Company upon the questions involved in this bill," controlled 8,000 shares. The certificate also states that the "entire 35,000 shares were held by 546 different persons, of whom 423 owned 50 shares or less, and of whom 383 resided in New York." The proposition then is, that notwithstanding the power of 8,840 shares, held by the managers of both corporations, against 8,000 held by complainants and the protective committee, complainants were required by Rule 94 to engage and organize all other stockholders, or enough of them to direct or change the corporate management; in other words, struggle for the control of the corporation with an adverse board of directors. And such struggle, appellant contends, "could not be regarded as presumptively futile," as there would be an appeal to "the self-interest of the remaining stockholders," and, it is pointed out, that the certificate recites that control through the stockholders was subsequently obtained. But it was obtained after the suit was begun and the antagonism of the directors was more clearly exhibited. The circumstances of this case preclude therefore an acceptance of appellant's proposition. Rule 94 is intended to have practical operation, and to have that it must, as to its requirements, be given such play as to fit the conditions of different cases. Therefore, considering that this case by reason of its facts falls within the principle of *Doctor v. Harrington*, we do not review the cases cited by appellee, wherein, it is contended, suits were

justified by demand on the directors alone, nor consider whether stockholders have the power to compel directors to institute suits to which the directors are opposed.

We answer both questions certified in the negative.