POST v. BUCK'S STOVE & RANGE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 22, 1912.)

No. 3,662.

1. CORPORATIONS. (§ 297*)—DIRECTORS—AUTHORITY—BUSINESS POLICY.

While directors of a private business corporation may not act oppressively, fraudulently, or in such a manner as to destroy the corporate existence, or contrary to law or the purposes for which the corporation was organized, and may not dissipate its assets or secure private advantage at corporate expense, they are nevertheless the governing body, representing both the majority and minority stockholders, and as such possess a wide discretion in determining its business policies and the methods of executing them, which a stockholder cannot control or have revised by an appeal to the courts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1274–1291; Dec. Dig. § 297.*]

2. CORPORATIONS (§ 202*)—DIRECTORS—ACTION—SETTLEMENT OF LITIGATION—RIGHTS OF OBJECTING STOCKHOLDER.

A controversy having arisen between a corporation engaged in manufacturing stoves and its employés, who were members of a labor organization, the union employés quit, and the labor organization inaugurated an extensive boycott against the corporation and its products, whereupon suit was instituted for an injunction against the labor organization and its leaders, and, an order directing the issuance of a modified injunction having been sustained by the Circuit Court of Appeals, both parties appealed to the Supreme Court, pending which a settlement was arrived at, whereby the corporation released its right to sue for treble damages under Sherman Anti-Trust Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), on the ground that the labor organization constituted an unlawful combination in restraint of trade and commerce, to which settlement complainant, a minority stockholder, objected. Held, that such settlement was within the jurisdiction of the corporation's board of directors in the ordinary management of the corporation's affairs, and, having been entered into in good faith, was binding on such minority stockholder notwithstanding his protest, and he was therefore not entitled thereafter to maintain a suit for such damages for the benefit of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 770–780; Dec. Dig. § 202.*]

3. MONOPOLIES (§ 12*)—LABOR UNION—CONTRACT—VALIDITY.

A contract between a manufacturing corporation and a labor union, by which the corporation thereafter agreed to pay union wages and to comply with union hours of labor and conditions of employment, but which contained no direct provision binding the corporation not to employ nonunion men, was not objectionable as tending to create a monopoly in favor of members of the unions to the exclusion of others seeking employment.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by C. W. Post against the Buck's Stove & Range Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

See, also, Buck's Stove & Range Co. v. American Federation of Labor, 219 U. S. 581, 31 Sup. Ct. 472, 55 L. Ed. 345; Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

Charles C. Collins, of St. Louis, Mo. (Arthur B. Williams, on the brief), for appellant.

Charles M. Polk, of St. Louis, Mo. (A. & J. F. Lee, of St. Louis, Mo., on the brief), for Buck's Stove & Range Co.

Jackson H. Ralston, of Washington, D. C. (Frederick L. Siddons and Wm. E. Richardson, both of Washington, D. C., and John S. Lehmann, of St. Louis, Mo., on the brief), for American Federation of Labor and others.

Before SANBORN, HOOK, and SMITH, Circuit Judges.

HOOK, Circuit Judge. This is a suit by Charles W. Post, as a stockholder of the Buck's Stove & Range Company, to enforce for its benefit a cause of action against the American Federation of Labor, its allied organizations, and their representatives, for treble damages under section 7 of the Sherman Anti-Trust Act (26 Stat. 209), resulting from a combination in restraint of trade and commerce. The bill of complaint was dismissed on demurrer, and Post appealed.

The Stove Company is a Missouri corporation, engaged in the manufacture and sale in interstate commerce of stoves and ranges. Its general offices and factory are at St. Louis, Mo. Its capital stock is $1,500,000, of which Post owns about 7 per cent. Some years ago a controversy arose in one of its manufacturing departments over the hours of labor, and the union employés quit. Thereupon the labor organizations throughout the United States inaugurated an extensive boycott against the company, its manufactured products, and those who persisted in dealing in them, thereby, according to the bill of complaint, unlawfully inflicting upon it a financial loss to the extent of $250,000. The Stove Company brought a suit in the Supreme Court of the District of Columbia and obtained an injunction in broad terms. On appeal to the Court of Appeals of the District, the company again prevailed, though the injunction was substantially modified. 33 App. D. C. 83, 32 L. R. A. (N. S.) 748. From the decree of that court the parties, both complainant and defendant, took appeals to the Supreme Court of the United States, but before the hearing they amicably adjusted their differences by executing writings containing expressions of mutual friendship and consideration, and provisions that the company would not sue because of past controversies, that it would establish union wages, hours of labor, and conditions of employment, and that the labor organizations on their part commended the product of the company to their members, sympathizers, and friends. When the settlement came to the attention of the Supreme Court, it dismissed the appeals as involving questions purely moot. 219 U. S. 581, 31 Sup. Ct. 472, 55 L. Ed. 345. A phase of the controversy appears in 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. Post protested against the settlement. In communications to the officers and directors of his company, he demanded that, having won its fight against the unlawful boycott, its right to recover the damages sustained be enforced. Failing in this, he brought the present suit as a stockholder, claiming the settlement was without consideration, and was illegal and void. The company was made a party

defendant according to equity rule 94 then in force. The foregoing recital sufficiently presents the merits of the case, which we will consider to the exclusion of less important matters.

[1] The settlement with the labor organizations was made upon the authority of the board of directors of the Stove Company, and the only objection or complaint by any one interested in or connected with it was by the minority stockholder. As the chartered agents of a corporation, the directors represent, not only the artificial body, but also all who own its shares of stock. While they must be mindful of the corporate welfare, and not act oppressively, fraudulently, or destructively of the corporate existence, or contrary to the laws of the state or nation, or the purposes for which the corporation was·organized, nor dissipate its assets or secure private advantage at corporate expense, yet as its governing body they possess a wide discretion in determining its business policies and the methods of executing them, which a stockholder cannot control or have revised by an appeal to the courts. Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Delaware & Hudson Co. v. Railroad, 213 U. S. 435, 29 Sup. Ct. 540, 53 L. Ed. 862. In United States v. Union Pacific R. Co., 98 U. S. 569, 611 (25 L. Ed. 143), the Supreme Court, speaking of a corporation, said:

"So long·as it exists in the possession and unrestrained exercise of all its corporate powers, its board of directors, unless under judicial prohibition or compulsion, is vested with the sole authority to decide whether it will assert its right of action for a supposed injury, or will condone it."

In some respects there is an analogy between a corporation and a representative government, which proceeds according to the views of the majority within constitutional lines. The minority must rely upon persuading the greater number of the right or expediency of their position, and, failing that, must yield, unless some recognized limitation has been broken.

[2] It is averred in the·bill of complaint that the Stove Company was injured to the extent of $250,000 by an illegal boycott of its interstate business, that the Sherman act gave it the right to threefold damages, and that the defendants who did the wrong were solvent and good for the amount. Upon this it is argued that the directors,· against the protest of the complaining stockholder, paid $750,000 for immunity from unlawful attacks, and thereby gave away assets aggregating half the amount of its capital stock without consideration. The claim for a penalty or a punitive increase of actual damage, like one for a forfeiture, is not a favorite in the law. In no true sense was the claim of that kind in the case at bar a property asset, and we do not doubt that the managing officers of the corporation could in their discretion waive or refuse to enforce it without being brought to account in a court of equity. The claim for actual damage to the business of the company was an asset in a way, but the fact that it was unacknowledged and unliquidated still remained. The averments in the bill do not change its essential character. It was not like money in bank, nor even a credit with the debtor's sense of obligation born of a quid pro quo. Barring adjustment, its liquidation and collection

to any extent meant continued expensive litigation. In the most favorable view, that was the prospect before the directors, and they were entitled to look at it practically as is commonly done in business transactions. The courts favor settlements of controversies, both before and after litigation, and will rarely overhaul them with a critical eye.

It is also inaccurate to say there was a mere purchase of immunity from unlawful attacks upon the business of the company, or that its claim for damages was given up without consideration. When the litigation with the labor organization stopped, it stood upon the decree of injunction of the Court of Appeals of the District of Columbia. It is not our province to review that decree, but presumably it protected the company in all its legal rights. But, however this may be, there belonged to the labor organizations a large field of legitimate endeavor and activity, with respect to which every business man and corporation might lawfully contract with them, and regarding which negotiations and agreements are of everyday occurrence. Organized labor has become an important factor in modern industrial life, where its influence is widely recognized; and its rightful status in the law should not be denied because of excesses committed in its name. The directors of the Stove Company, charged with the management of its extensive interests, may have come to believe in the economic advantage of union wages, hours of labor, and conditions of employment, and may have regarded the affirmative friendship of the labor organizations as valuable and desirable, and their disfavor, not unlawfully exercised, as undesirable. In such a situation, and presumably it arose, there were sufficient elements of consideration for the contract, and to overthrow it we should not hunt for others, not expressed in the writings or acknowledged by either party. We see in the daily chronicles of business affairs frequent instances of similar negotiations and agreements in which the managers of large enterprises participate, and what they do is accepted without question. The directors of the Stove Company did nothing more, save to yield an unliquidated claim for damages. It was their province to determine the wisdom or expediency of the course adopted. They did not act oppressively or fraudulently, and no stockholder gained or lost more or less than another. They acted in good faith, according to the lights given them, and for the welfare of all the interests in their charge.

[3] It is further contended that the settlement in question provides for a "closed shop," that is to say, a place where union labor only is employed, and that a contract of that character is unlawful, because it restricts competition and tends to create a monopoly in favor of members of the unions, to the exclusion of all others seeking employment. Counsel for the Stove Company and for the labor organizations deny that is the effect of the contract, and we agree with them. There is no direct provision requiring it, and it does not follow from the adoption of "union wages, hours of labor, and conditions of employment," nor from the expressions of the friendly attitude of the management of the company and their purpose to treat organized labor "wisely and conservatively and upon a friendly basis." The details as to wages, hours of labor, and conditions of employment were not defined, but were intrusted to the company for execution. We think

that according to general observation it is not at all uncommon for the conditions contemplated by the contract to exist in open shops, where both union and nonunion labor are employed. This being so, we need not stop to consider whether a contract for a closed shop would be valid or invalid.

The decree is affirmed.