## DAVIS v. PEARCE et al. [*]

Circuit Court of Appeals, Eighth Circuit.
December 12, 1928.

No. 8078.

James D. Parriott, of Denver, Colo. (William Ellis Lady, of Los Angeles, Cal., and A. L. Doud, of Denver, Colo., on the brief), for appellant.

Robert G. Bosworth, of Denver, Colo. (George L. Nye and William Baird King, both of Denver, Colo., on the brief), for appellees.

Before BOOTH and COTTERAL, Circuit Judges, and REEVES, District Judge.

BOOTH, Circuit Judge. This is an appeal from a decree which dismissed plaintiff's bill for want of equity, after a trial. Jurisdiction is based upon diversity of citizenship and the requisite amount involved. In the court below appellant was plaintiff, and Alfred T. Pearce, Gertrude Pearce, the Security Realty Company, the Suburban Homesites Company, and the Olinger Corporation were named as defendants. The Olinger Corporation, however, was not served with process, and made no appearance.

The bill sets out that defendant the Security Realty Company, a corporation of Iowa, was formed in October, 1923; that its capital stock consisted of six shares of par value of $100 each; that one share was issued to defendant Alfred T. Pearce and two shares to his wife, the defendant Gertrude Pearce, and they have continued to own said shares respectively ever since; that one share was issued to L. Fon Davis and two shares to his sister Mary V. Davis, the latter shares being held in trust for L. Fon Davis, who continued to be the owner of said three shares until his death; that said Alfred T. Pearce, Gertrude Pearce, and L. Fon Davis were directors of said company; that Alfred T. Pearce has been president and Gertrude Pearce secretary-treasurer of said company from its organization; that L. Fon Davis was vice president until his death; that about October, 1923, the Security Realty Company entered into a written agreement with defendant the Olinger Corporation (at that time called George W. Olinger, Inc.), by the terms of which the Security Realty Company acquired the exclusive right to sell a large tract

[*] Rehearing denied April 12, 1929.

of suburban property near Denver, Colo., known as "Bonnie Brae," which was owned by the Olinger Corporation, and which had been subdivided into lots; that the agreement provided how the expenses should be borne and how the proceeds should be divided; that the Security Realty Company entered upon the performance of the agreement, and made sales of lots or parcels of the said land, amounting to $75,000 or $100,000 prior to the death of L. Fon Davis; that L. Fon Davis died testate about September 20, 1924, leaving plaintiff his sole devisee; that his will was duly probated, and that plaintiff was adjudicated to be the owner of the three shares of stock in the Security Realty Company which were formerly owned by L. Fon Davis; that, at the time of the death of L. Fon Davis, the entire capital of the Security Realty Company was employed in carrying on the business under said agreement; that about one-half of the land had been sold on terms of part cash and the balance in deferred payments secured by the sales contract; that it was understood that the agreement would be extended from year to year, if necessary, to afford the Security Realty Company opportunity to complete the selling of the land and the collection of the proceeds; that, shortly after the death of L. Fon Davis, defendants Alfred T. Pearce and Gertrude Pearce, for the purpose of destroying the value of plaintiff's stock in the Security Realty Company, organized a new corporation under the laws of the state of Colorado known as the Suburban Homesites Company, and became the sole stockholders, except one share, and became directors and officers of said corporation and controlled the same; that about October 1, 1924, Alfred T. Pearce and Gertrude Pearce, in violation of their duties as directors of the Security Realty Company, caused a new contract to be made by the Olinger Corporation with the Suburban Homesites Company for the sale of the unsold lots in the "Bonnie Brae" addition, and from that time carried on the business formerly carried on by the Security Realty Company, in the same offices, with the same clerical force and salesmen, and without paying anything to the Security Realty Company; that Alfred T. Pearce and Gertrude Pearce thus became in control of both the Security Realty Company and the Suburban Homesites Company; that they refused to furnish plaintiff any statement regarding the Suburban Homesites Company; that Alfred T. Pearce has collected moneys from sales made by the Security Realty Company, and has appropriated the same; that the vacancy in the board of directors of the Security Realty Company caused by the death of L. Fon Davis has not been filled, but that Alfred T. Pearce and Gertrude Pearce have increased the salary of Alfred T. Pearce as an officer of the Security Realty Company from $200 per month to $400 per month; that the Suburban Homesites Company has continued to make sales of lots in "Bonnie Brae," but no accounting of profits has been had with plaintiff; that from time to time Alfred T. Pearce has made certain payments to plaintiff which he claimed were dividends from collections made of moneys due the Security Realty Company, but has refused to make a complete accounting; that plaintiff has protested against the Suburban Homesites Company taking over the business of the Security Realty Company, and has protested against the taking of an increased salary by Alfred T. Pearce; that Alfred T. Pearce and Gertrude Pearce assert that no part of the proceeds of sales of land made by the Suburban Homesites Company belongs to the Security Realty Company or to plaintiff; that the contract between the Olinger Corporation and the Suburban Homesites Company was brought about by fraudulent representations on the part of Alfred T. Pearce and Gertrude Pearce; that the Olinger Corporation, while not guilty of actual fraud, knew of the death of L. Fon Davis, and knew that Alfred T. Pearce and Gertrude Pearce could not for themselves or for any corporation controlled by them acquire any of the property rights belonging to the Security Realty Company against the protests of minority stockholders thereof. The prayer of the bill is for a receiver, and for a disclosure and an accounting.

The answer of the defendants admits the formation of the Security Realty Company and the making of the agreement with the Olinger Corporation; admits the sale of lots by the Security Realty Company; but denies that L. Fon Davis devoted his time to the business; admits the death of L. Fon Davis and that plaintiff is the present owner of three shares of the stock of the Security Realty Company; alleges that, at the time of the death of L. Fon Davis, the agreement with the Olinger Corporation had expired; denies that there was any agreement or understanding that the agreement should be renewed from year to year; admits the organization of the Suburban Homesites Company, but denies that there was any fraudulent or wrongful intent connected therewith; admits that Alfred T. Pearce and Gertrude Pearce became directors and officers thereof, and took control thereof; admits that they are the sole

surviving directors of the Security Realty Company, but alleges that plaintiff refused to be elected a director thereof; admits the making of the agreement by the Suburban Homesites Company with the Olinger Corporation, but denies that there was any fraud or concealment on the part of Alfred T. Pearce and Gertrude Pearce, but alleges that the Olinger Corporation had full knowledge of all the facts, and refused to execute a new contract with the Security Realty Company; alleges that the only business the Security Realty Company had after the old contract expired was to make collection of the installment payments coming due, and make an accounting therefor in accordance with the terms of the old contract; denies that Alfred T. Pearce appropriated any moneys belonging to the Security Realty Company; admits the making of sales by the Suburban Homesites Company and that no accounting has been had therefor with the Security Realty Company, and denies that the Security Realty Company is entitled to any accounting therefor; admits that plaintiff made demand for a statement and settlement of the amount due plaintiff from the Security Realty Company, and alleges that statement was furnished and payments have been made to plaintiff of sums due her: admits that for the months of October, November, and December, 1924, the sum of $400 per month was paid Alfred T. Pearce; admits that plaintiff protested against such payments, and alleges that, since December, 1924, only $200 has been paid Alfred T. Pearce per month from funds of the Security Realty Company, but that a credit of $200 additional per month has been made on the account of Alfred T. Pearce; alleges that in October, 1924, Alfred T. Pearce told plaintiff of the formation of the Suburban Homesites Company and of the making of the new agreement with the Olinger Corporation; alleges that the books of the Security Realty Company have at all times been open to inspection by plaintiff, but admits that a statement or accounting of the affairs of the Suburban Homesites Company has been denied plaintiff; denies that the new contract between the Suburban Homesites Company and the Olinger Corporation was entered into because of any false representations by Alfred T. Pearce and Gertrude Pearce; and denies that said parties violated any duties owed by them to the Security Realty Company or to plaintiff in causing said new contract to be made.

The answer further sets out that it was provided in said agreement between the Security Realty Company and the Olinger Corporation that Alfred T. Pearce and L. Fon Davis should devote their whole time to the business of selling the lots in "Bonnie Brae," but that L. Fon Davis failed to carry out this part of the agreement, and that the Olinger Corporation threatened to cancel the agreement for that reason; that said Alfred T. Pearce by his efforts prevented a cancellation; that L. Fon Davis went to California, entered into a contract there in the name of the Security Realty Company to sell certain lands, and insisted that the profits he would thus make would offset his share of the profits which Alfred T. Pearce was making in the sale of lots in "Bonnie Brae"; that this venture in California was unsuccessful; that L. Fon Davis at all times received the same share of the profits of the Security Realty Company that was received by Alfred T. Pearce and Gertrude Pearce.

The answer further alleges that, shortly prior to the death of L. Fon Davis, defendant Alfred T. Pearce tried to negotiate a renewal of the agreement between the Security Realty Company and the Olinger Corporation, but that the latter corporation would not renew the same.

The answer further alleges that defendants have at all times accounted to plaintiff for the proceeds of sales made under the contract of the Security Realty Company; that defendants are willing that an audit be made of the books of the Security Realty Company, and stand ready to pay to plaintiff any sum or sums found to be due her.

The answer further sets up as separate defenses laches, ratification, and estoppel, based upon alleged full knowledge by plaintiff of all the facts relative to the formation of the Suburban Homesites Company and her conduct in view of such knowledge.

The evidence submitted at the trial clearly shows that the Olinger Corporation, in making the contract with the Security Realty Company, relied upon getting the personal services of both Davis and Pearce; that Davis spent only about one month in Denver after the contract was made, and then went to California and secured a new contract in the name of the Security Realty Company for selling land; that the Olinger Corporation was displeased at this, and threatened to cancel the contract, but finally allowed it to stand; that in August, 1924, the question of a new contract was taken up by the Olinger Corporation with Pearce, who tried to have a new contract made in the name of the Security Realty Company; that the Olinger Corporation refused to make a new contract with the Security Realty Company; that, after

the death of Mr. Davis, the Olinger Corporation again refused to make a new contract with the Security Realty Company, among other reasons, because the Olinger Corporation thought it would complicate matters to make a contract with a corporation one-half of whose stock was owned by an estate. After the refusal of the Olinger Corporation to make a new contract with the Security Realty Company, it was suggested that a new corporation be formed and the contract be made with it. This suggestion was carried out, and the new contract was made with the Suburban Homesites Company. In the new contract it was provided that Pearce should devote his entire time to the business.

The evidence shows that the situation on October 1, 1925, was about as follows: The Olinger Corporation had refused to make a new contract with the Security Realty Company. A new corporation the Suburban Homesites Company, had been formed, in which Pearce and his wife were the principal stockholders; and a new contract had been made between the Olinger Corporation and the new corporation. Though the right of the Security Realty Company to continue to make sales under the old contract had expired, that company still had rights under the contract. There were outstanding unpaid installments on sales already made which required collection. Adjustment of the proceeds had also to be made. The Security Realty Company continued to carry on this work, and Alfred T. Pearce and Gertrude Pearce continued to act as officers and directors. The new corporation occupied offices with the Security Realty Company and shared the office expenses. This was to the advantage of both.

In October, 1924, plaintiff visited Denver, and was fully advised of the situation. She was told of the formation of the new corporation, and that the profits of future sales would belong to it. No protest was made by plaintiff. The books of the Security Realty Company were open to her inspection. One or two payments of dividends were made to her, but later ones, though declared, were held by the Security Realty Company until by proper probate proceedings plaintiff should be adjudged the owner thereof. In August, 1925, plaintiff's attorney, Mr. Lady, visited Denver, and received $3,150 in dividends on behalf of plaintiff; her status as owner having been satisfactorily established. The books of account of the Security Realty Company were examined by Mr. Lady; contracts of sale made by the Security Realty Company, as well as those made by the new compa-

ny, were freely shown him; but he was denied access to the books of account of the new company. On his return to California, Mr. Lady advised plaintiff that she had rights in the business being carried on by the Suburban Homesites Company. Further dividends by the Security Realty Company were paid to plaintiff from time to time until the commencement of the present suit. In December, 1925, Mr. Lady made a second trip to Denver. He demanded an accounting of the business of the Suburban Homesites Company. This was refused. Correspondence followed, and the present suit was commenced April 27, 1927. The result of the trial has been already stated.

The contentions of appellant briefly stated are, that Mr. Pearce, in not procuring an extension of the contract in the name of the Security Realty Company, and in making a new contract in the name of the Suburban Homesites Company, violated the fiduciary relationship existing between himself as a director and the Security Realty Company and its stockholders, especially plaintiff; and that the new contract taken in the name of the Suburban Homesites Company must be held in equity to have been taken for the benefit of the Security Realty Company and its stockholders, including plaintiff.

 It is unquestionably the law that the directors of a corporation occupy a fiduciary relationship to the corporation and its stockholders. In the management of the corporate affairs, the directors are required to act in the utmost good faith. They are not allowed to make a personal profit at the expense of the corporation or its stockholders. Where they have entered into a transaction in violation of these principles, and a profit has been made, equity will compel them to account therefor to the corporation. The books are full of cases involving the application of these principles to many different states of facts. Many such cases have been cited, among them the following: McCourt v. Singers-Bigger, 145 F. 103 (C. C. A. 8); De Bardeleben v. Bessemer L. & I. Co., 140 Ala. 621, 37 So. 511; Zeckendorf v. Steinfeld, 12 Ariz. 245, 100 P. 784; Ten Eyck v. Pontiac, etc., R. Co., 74 Mich. 226, 41 N. W. 905, 3 L. R. A. 378, 16 Am. St. Rep. 633; Pikes Peak Co. v. Pfuntner, 158 Mich. 412, 123 N. W. 19; Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667. See, also, as analogous cases: Williamson v. Monroe (C. C.) 101 F. 322; Trice v. Comstock, 121 F. 620 (C. C. A. 8), 61 L. R. A. 176; Phyfe v. Wardell, 5 Paige (N. Y.) 268, 28 Am. Dec. 430; Robinson v.

Jewett, 116 N. Y. 40, 22 N. E. 224; Davis v. Hamlin, 108 Ill. 39, 48 Am. Rep. 541.

■■ They have all been thoughtfully considered. From the numerous authorities there may be deduced the following tests to be applied where the conduct of a director of a corporation is called in question in a court of equity: Do the actions or omissions show a lack of the highest good faith on the part of the director toward the corporation and the stockholders? Has the director made for himself out of a transaction a profit which by proper effort on his part could have been obtained for the corporation?

Let us apply these tests to the facts in the case at bar. The evidence shows that both Pearce and Davis hoped to obtain a renewal of the contract which the Security Realty Company had with the Olinger Corporation. They talked about the matter in California in August, 1924. Pearce returned to Denver, and took up negotiations with Mr. Olinger and Mr. Flynn, officers of the Olinger Corporation. These negotiations were carried on both before and after the death of Mr. Davis. For various reasons, which were sufficient to it, and which are immaterial here, the Olinger Corporation refused to make a further contract with the Security Realty Company. It was only after this refusal was made by the Olinger Corporation, and after the old contract had expired, that it was suggested on the part of the Olinger Corporation that a new corporation be formed and a new contract be made with it. This was done.

Counsel for appellee contends that these negotiations for a renewal of the old contract, and the final making of a new one with a new corporation, were not in good faith. There is no foundation in the record for such a contention, and such was the holding of the trial court. The testimony relative to the transactions was not that of Mr. Pearce, an interested party, but that of Mr. Olinger and Mr. Flynn, wholly disinterested parties.

We turn to the second test. It is conceded that profits have accrued under the new contract, and that Pearce has benefited thereby. Were they profits that could have been obtained for the Security Realty Company and its stockholders? It must be borne in mind that the old contract of the Security Realty Company carried with it no right of renewal. But the contention is that there was an expectancy of renewal and that this expectancy was a property right of the corporation, which Mr. Pearce was bound to protect.

It has already been noted that the real character of the contract was for personal services of Davis and Pearce. These services were to be performed in the managerial capacity of overseeing sales of real estate. Whether an expectancy of renewal which has often been held to exist in connection with leases of real estate can be said to exist in cases of contracts for personal services may not be free from doubt. But, conceding that the expectancy did exist when the contract was made and while it was being performed, it would naturally cease to exist when one of the parties died whose personal services were contracted for. And the expectancy of renewal would certainly cease to exist after renewal had positively been refused. At the time when the new contract was made with the new corporation, the Security Realty Company had neither the right of renewal, the expectancy of renewal, nor the possibility of renewal.

In the face of all the facts, we think it cannot be said that Pearce took to himself profits which could by proper effort have been obtained for the Security Realty Company. The second test has therefore not been fulfilled. Crittenden & Cowles Co. v. Cowles, 66 App. Div. 95, 72 N. Y. S. 701. See, also, Lindsay v. Swift, 230 Mass. 407, 119 N. E. 787.

The evidence does not show that at any time did Mr. Pearce place himself in a position where his own personal interest was in conflict with his duty to the Security Realty Company, of which he was a director. He endeavored to obtain a new contract for the Security Realty Company as long as there was a possibility of succeeding. When that possibility ceased, the taking of the contract in the name of a new corporation in which he was interested financially was not in conflict with his duty toward the old corporation. On the contrary, his action in more ways than one was of benefit to the Security Realty Company. Furthermore, there is no charge made that Mr. Pearce has been derelict in his duty toward the Security Realty Company in making the collections under the old contract.

Our conclusion is that the charges against Pearce of fraud, violation of duty as director, wrongful taking of profits which he could and should have obtained for the Security Realty Company, are none of them sustained by the evidence.

■ One matter remains for consideration: Shortly after the death of Mr. Davis, the salary of Mr. Pearce as president of the Security Realty Company was raised from $200 to $400 per month; the reason suggested being that Mr. Pearce was then called upon to perform the work theretofore per-

formed by two men. With the reason for the increase we are not specially concerned, although it might naturally be supposed when the Security Realty Company was cut off from one of its activities, viz. making sales, and was confined to the making of collections, that the duties of its officers would decrease to some extent. However that might be, other considerations control the question of the validity of the increase in salary. The increase was voted by the board of directors of the corporation, but the passage of the motion was effected by the vote of Mr. Pearce himself. It is to be noted that there has been no acquiescence by plaintiff in this increase of salary.

It is elementary law that the salary of an officer and director of a corporation cannot be increased by a resolution, the passage of which was dependent upon and effected by the vote of the director himself. Such action is prima facie voidable at the election of a stockholder. 14A C. J. 143, § 1908; Jones v. Morrison, 31 Minn. 140, 16 N. W. 854.

Our conclusion is that the increase of salary to Mr. Pearce was invalid and that there must be an accounting therefor.

The record is somewhat uncertain whether plaintiff claims that she has not been paid her proper share of dividends from the Security Realty Company since the death of Mr. Davis. If such claim is made, the accounting may, in the discretion of the trial court, be extended to include such matter; costs on the accounting to be fixed under the direction of the trial court.

In the foregoing discussion we have treated the case as involving a single cause of action in favor of plaintiff. A close analysis of the bill, however, discloses that plaintiff has attempted to state two causes of action; one in favor of plaintiff as a stockholder against the corporation and its officers for unequal distribution of dividends, the other a cause of action in favor of the corporation but brought by a stockholder against two of the directors for violation of duty as such directors. Whether the two causes of action can properly be joined, and whether the bill conforms to the requirements of equity rule 27 in respect to the second cause of action, are questions which we have not felt called upon to discuss, since they have not been raised by counsel. As to the latter question, we have considered that the bill was sufficient within the ruling in Delaware & Hudson Co. v. Albany & Susquehanna R. Co., 213 U. S. 435, 29 S. Ct. 540, 53 L. Ed. 862.

The decree is reversed and the cause remanded, with instructions for reinstatement of the cause and for further proceedings not inconsistent with the views herein expressed. Costs in this court will be equally divided.