Danville S. WEBBER, et al.

v.

WEBBER OIL COMPANY, et al.

Supreme Judicial Court of Maine.

Argued June 7, 1985.

Decided July 19, 1985.

Bowker, Almes, Perkins, Mecsas & Gerrard, Robert C. Gerrard (orally), Lawrence G. Green, Neill E. Silverman, Boston, Mass., Curtis, Thaxter, Lipez, Stevene, Bro-

der & Micoleau, Sidney St. F. Thaxter, II, Deborah M. Mann, Portland, for plaintiffs.

Kelly, Remmel & Zimmerman, John N. Kelly (orally), Leland N. Chisholm, Portland, for Webber Oil Co.

Verrill & Dana, Howard H. Dana, Jr. (orally), Roger A. Putnam, William C. Knowles, Portland, for Mahaneys and Linda Harnum and David W. Fuller.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

WATHEN, Justice.

This case originates in an intra-familial struggle for control of a closely held corporation, Webber Oil Company ("Webber Oil"). Plaintiffs, who control a minority interest in Webber Oil, appeal from orders of the Superior Court (Penobscot County) granting defendants' motion for summary judgment on four counts of plaintiffs' complaint, dismissing two counts of plaintiffs' complaint for failure to state a claim, awarding costs to defendants for depositions taken in connection with the action, denying plaintiffs' motion to restore an injunction, entering judgment for the corporate defendant on a bond ordered in connection with the injunction, denying plaintiffs' motion for leave to amend their complaint, and ordering the reimbursement of a trustee for counsel fees and expenses incurred in defending this action. We affirm the orders of the Superior Court in part and vacate in part.

## I.

The complex facts and procedural history of the subject litigation may be summarized as follows: The plaintiffs are Danville S. Webber, individually and as trustee of the Grace T. Webber Trust, and his daughters: Diane S. Cahill, Sally J. Fredella, and Grace Webber Harris. Collectively, plaintiff's control a minority interest in Webber Oil. Mr. Webber and Ms. Cahill are two members of the five member Board of Di-

rectors of Webber Oil and Mr. Webber held the positions of chairman of the board and treasurer.

The defendants are: Webber Oil, Larry K. Mahaney, Mr. Mahaney's ex-wife, Louise F. Mahaney, David W. Fuller, as trustee of the Alburney E. Webber Trust (the "AEW Trust"), and Linda F. Harnum, individually and as trustee of the AEW Trust. Collectively, defendants control a majority interest in Webber Oil. Mr. Mahaney, however, owns no Webber Oil stock. Mr. Mahaney, Ms. Mahaney, and Ms. Mahaney's sister, Linda F. Harnum, comprise three members of the five member Board of Webber Oil. Mr. Mahaney is the president of Webber Oil.

Mr. Webber, Ms. Cahill, Mr. Fuller, and Ms. Harnum are trustees of the AEW Trust which holds a majority of the voting stock for the benefit of both the "Webber" (plaintiffs) and "Fuller" (defendants) factions.[1] The terms of AEW Trust require unanimity among the trustees for any vote of the shares held in the AEW Trust.

Mr. Mahaney has been the elected president of Webber Oil since 1969. Plaintiffs allege that the "Mahaney presidency has been disastrous for Webber Oil in recent years." Specifically, plaintiffs contend that Mr. Mahaney has neglected his duties, failed to institute needed management and industry practices, failed to exercise reasonable business judgment in making purchases, diverted corporate opportunities to his own benefit, wasted corporate assets, and engaged in legally questionable transactions—including possible antitrust and tax law violations. Plaintiffs held informal meetings among themselves and asked Mr. Mahaney about company business without satisfaction in the year prior to October 26, 1983.

On October 26, 1983, a special meeting of the Board was held at the company offices in Bangor. Mr. Mahaney notified each of the directors by telephone of the meeting and its scheduled time—10:00 a.m. Ms.

---

1. Mr. Webber is an uncle of Ms. Mahaney and Ms. Harnum and Mr. Fuller is their stepfather.

Mahaney, who was studying in England in the fall of 1983, was notified of the meeting by telephone at her London apartment on October 25 at about 11:46 p.m. (London time). Mr. Mahaney told Ms. Mahaney that the meeting concerned Grace Webber Harris' demand to view certain corporate records. Ms. Mahaney told Mr. Mahaney that she would not be attending the meeting, and, in fact, she did not attend the meeting. The bylaws of Webber Oil permit notice of a directors' meeting to be made by telephone if the director notified is "within a distance from the place of the proposed meeting so that it is reasonably convenient and possible to make the journey in the time allowed."

The other three directors were notified by telephone before Ms. Mahaney and they, along with Mr. Mahaney, attended the meeting. Mr. Webber has sworn that Mr. Mahaney told him that the meeting had been called to discuss "major policy decisions" at Webber Oil.

At the October 26 meeting, Mr. Webber made a motion that Mr. Mahaney be removed as president of Webber Oil and all other companies. The motion was seconded by Ms. Cahill. Mr. Mahaney then moved to adjourn the meeting and his motion was seconded by Ms. Harnum. The resulting vote on adjournment was 2–2. At this point, Mr. Webber announced that Mr. Mahaney's vote did not count pursuant to 13–A M.R.S.A. § 717 (1981) (Transactions between corporations and directors and officers).

The motion to discharge Mr. Mahaney as president also resulted in a 2–2 vote, and again Mr. Webber announced that Mr. Mahaney's vote did not count pursuant to section 717. In Mr. Webber's view, therefore, the vote being 2–1, Mr. Mahaney was discharged as president. By a similar voting process, Mr. Webber was appointed interim president.

On October 28, 1983, a special meeting of the board was held at which all five directors were in attendance. Mr. Mahaney moved to rescind the vote of the directors that appointed Mr. Webber interim chief executive officer. The vote was 3–2 in favor of the motion, but Mr. Webber purported to disqualify Mr. Mahaney's vote, so that the tally would be 2–2 and the motion would not carry. A motion was also made for the removal of Mr. Webber from his position as chairman of the board. Again the vote was 3–2 in favor of removal, and again Mr. Webber purported to disqualify Mr. Mahaney's vote as "all of a piece", to return to the office of president. Mr. Webber elected not to disqualify his own vote pursuant to his interpretation of section 717, on the ground that he had no self-interest in the matter.

On November 7, 1983, plaintiffs brought a shareholders' derivative action against defendants seeking, among other things, declaratory relief that Mr. Mahaney had been discharged as president. The complaint charged Mr. Mahaney with gross mismanagement and breach of fiduciary duty. The plaintiffs filed their first amended complaint on November 30, 1983 and followed it five days later with a motion for partial summary judgment seeking a determination that Mr. Mahaney was validly discharged as president of Webber Oil.

On December 6, the plaintiffs moved for a temporary restraining order to restrain the defendants from holding a board meeting, acting on the proposals of Mr. Mahaney, curtailing the responsibilities or reducing the salary of Mr. Webber, or altering the status quo of any of the parties' relationships to Webber Oil. The Superior Court denied the TRO, but the Court reserved the right to review actions in regard to compensation of Mr. Webber. On December 7, a meeting of the Board was held at which, by a 3–2 vote, the Fuller faction voted that the actions taken at the October 26 meeting were of no effect.

The next day, defendants' motion for partial summary judgment was filed. After a January 30 Board meeting, defendants amended their motion for partial summary judgment to seek a determination that the Board had not discharged Mr. Ma-

haney as president, or if it did, that he had been reinstated by Board action on either December 7, 1983 or January 30, 1984. At the January 30, 1984 meeting, which Ms. Cahill did not attend because she had recently given birth by caesarian section, the Board voted 3–1 to remove Mr. Webber as Chairman of the Board and replace him with Mr. Mahaney, and to reiterate that all actions taken by the Board on October 26 in respect to the removal of Mr. Mahaney were without effect. The Board stated in its resolutions that the vote was to be effective to the extent that a court might sometime find the actions of October 26 effective and the actions of October 28 ineffective. In addition, the Board voted to reduce Mr. Webber's salary as treasurer from $57,000 to $12,000.

In February 1984, the plaintiffs moved to amend their first amended complaint by adding a count alleging unlawful actions taken by the majority shareholders of Webber Oil in using their controlling position and in reducing Mr. Webber's salary and the level of his dividends. The motion to amend was granted. The plaintiffs also moved for a preliminary injunction on the issue of the salary and dividend reductions.

On March 15, 1984, the Superior Court issued two orders: 1) Webber Oil was ordered to reinstate Mr. Webber's salary as treasurer at $57,000, and 2) the notice to Ms. Mahaney for the October 26 meeting was inadequate and she could object to any action taken at the October 26 meeting, rendering those actions void. On April 12, 1984, the Court ordered Mr. Webber to post a bond in favor of Webber Oil, in the event that the Court ordered him to repay part of his salary.

On September 17, 1984, defendants' motion for summary judgment was filed. The motion sought summary judgment on counts II–V of the plaintiffs' first amended complaint. On November 27, 1984, the Court issued an order stating that declaratory relief had previously been entered (on Count I in favor of Ms. Mahaney) and that all remaining claims were dismissed. Inso-far as the complaint sought removal of Mr. Mahaney as president, the dismissal was with prejudice; otherwise the dismissal was without prejudice to other actions by plaintiffs. The Order also dissolved the injunction reinstating Mr. Webber's salary at $57,000. Neither the November 27 Order nor the accompanying Opinion mentioned Count VI of plaintiffs' complaint which had been added by the second amended complaint.

On December 26, 1984, plaintiffs filed a motion for leave to amend their first amended complaint to add paragraphs complying with the requirements of 13–A M.R. S.A. § 627 (1981) that plaintiffs allege with particularity reasons why efforts to remove Mr. Mahaney, as president and as a director, through Board or shareholder action would have been futile. That same day, plaintiffs filed a notice of appeal to the Law Court, and defendants filed a motion for relief on the injunction bond and a bill of costs.

On January 2, 1985, the Superior Court denied plaintiffs' motion to amend their complaint. On February 4, 1985, the Superior Court issued an order granting Webber Oil judgment in the amount of $37,110 on the bond of Mr. Webber; in the process, the Superior Court denied plaintiffs' motion to restore the injunction for the pendency of the appeal. In the same Order, the Superior Court ruled that defendants' costs were to include the costs of depositions. The Order also supplemented the Court's November 27, 1984 Order and interpreted that Order as dismissing Count VI of the complaint. Plaintiffs filed an amended notice of appeal to the Law Court on February 19, 1985 to include the February 4, 1985 order on appeal.

On February 6, 1985, on the motion of defendants, the Superior Court issued an order compelling the AEW Trust, as a whole, to pay attorneys' fees incurred by Mr. Fuller, as trustee. The sum was fixed by an order dated March 11, 1985. On March 18, 1985, plaintiffs filed a notice of appeal in the Law Court from the order

compelling the AEW Trust to pay attorneys' fees. Webber Oil has filed a motion to dismiss part or all of plaintiffs' appeal.

## II.

Initially we note that Webber Oil has filed a motion to dismiss part or all of plaintiffs' appeal on the grounds that the appeal "appears to be barred by (1) the final judgment rule, (2) M.R.Civ.P. 73(f), and (3) this Court's requirements for standing and justiciability." Plaintiffs have filed three notices of appeal in this case: (1) the December 26, 1984 appeal of the November 27, 1984 Order granting summary judgment; (2) the February 19, 1985 appeal (and amended notice of appeal) of the Superior Court's January 2, 1985 denial of the motion for leave to amend and the Superior Court's February 4, 1984 Order clarifying the disposition of Count VI, awarding costs, denying restoration of the injunction, and awarding judgment on the injunction bond; and (3) the March 18, 1985 notice of appeal from the Superior Court's March 11, 1985 Order awarding Mr. Fuller counsel fees incurred in defending the action for the trust.

As will be discussed in Part VI of this opinion, because the November 27 Order did not dispose of Count VI, the November 27 Order is not a final judgment. Therefore, Webber Oil's arguments based on the theory that some of plaintiffs' appeals were taken in violation of rule 73(f) are unavailing. The February 4 Order, however, is a final judgment, and plaintiffs filed a timely appeal from that Order on February 19. Plaintiffs were not barred from appealing from the February 4 Order by the fact they erroneously filed a notice of appeal from the November 27 Order. *See Olsen v. French,* 456 A.2d 869, 872 (Me.1983).

Webber Oil has suggested that plaintiffs may have forfeited their right to appeal some issues by failing to list the portion of the judgment appealed from in each notice of appeal. *See* M.R.Civ.P. 73(b). We note that in each instance plaintiffs appealed from the judgment of the Court, thereby preserving any claim of error in the record. *See* M.R.Civ.P. 73(a).

## III.

The Superior Court denied plaintiffs' motion for a summary judgment declaring the actions taken by the Webber faction at the October 26 Board meeting to be valid. The Superior Court found that Ms. Mahaney had not received proper notice of that meeting and that Ms. Mahaney had not waived her right to object to improper notice, even though she made no written objection until more than 4½ months after the meeting. The Superior Court concluded that Ms. Mahaney could void the actions taken at the October 26 meeting by objecting within time limits set by the Superior Court. Ms. Mahaney did, in fact, comply with the Court's conditions.

Although we agree that the notice given to Ms. Mahaney was inadequate, we conclude that the Superior Court erred in ruling that Ms. Mahaney had not waived her right to object to the inadequacy of the notice. The statute, 13–A M.R.S.A. § 712(2), requires prompt objection to the impropriety of a meeting, and to be effective, the objection must be in writing, 13–A M.R.S.A. § 712(3). The record contains no evidence that Ms. Mahaney objected to the inadequacy of notice either on October 25, when she received the notice, or on October 28 when she attended a special Board meeting. Moreover, she made no written objection until months after the meeting, and then only in response to the Court's order. On these facts, Ms. Mahaney failed to comply with the requirements of section 712.

The Superior Court's erroneous conclusion, however, does not require reversal because we conclude as a matter of law that Mr. Mahaney was not validly disqualified from voting on his removal as president. Mr. Webber and Ms. Cahill purported to disqualify Mr. Mahaney's vote on the ground that he was a director personally

"interested" in the matter. The statute, however, provides:

Except to the extent that the articles of incorporation or bylaws otherwise provide, the board of directors or the executive committee shall, without regard to this section [i.e., disqualifying the vote of interested directors in certain circumstances], have authority to fix the compensation of directors for their services as directors, officers, or in any other capacity.

13–A M.R.S.A. § 717(5) (1981). Neither Webber Oil's articles of incorporation nor its bylaws prohibit directors from voting on their compensation as officers. We conclude that because the level of compensation necessarily is implicated by removal, Mr. Mahaney was authorized to have his vote count on his removal as president. His purported disqualification, therefore, was ineffective. *Cf. Hackett v. Diversified Chemicals, Inc.,* 180 So.2d 831, 834 (La.Ct. Apps.1965) (charter provision permitting directors to vote on own compensation implicitly authorized right to vote on termination). Thus, the Superior Court correctly denied plaintiffs' request for a declaration that Mr. Mahaney had been validly removed from the office of president.

## IV.

Plaintiffs argue that the Superior Court erred in dismissing the derivative actions set forth in Counts II, III, and IV of the complaint. Collectively, the three counts requested judicial removal of Mr. Mahaney, both as a director, and as an officer. In addition, the same counts sought corporate compensation for the alleged malfeasance of Mr. Mahaney and the alleged malfeasance of Ms. Mahaney, Ms. Harnum, and Mr. Fuller in their respective capacities as directors, shareholders, and trustee. With regard to the removal of Mr. Mahaney as a director the Superior Court ruled that, although 13–A M.R.S.A. § 707 (1981) permits such suits, plaintiffs failed to meet the statutory requirement of an affirmative vote by two thirds of the members of the board of directors. Plaintiffs contend that section 707 is not the exclusive means of seeking judicial removal of a director, and that courts of equity have jurisdiction to remove directors who have committed breaches of fiduciary duty even in the absence of such a vote.

■ In other jurisdictions the actual removal of a duly elected director by a court of equity in the absence of a showing of fraud is extremely rare. *See generally* 2 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 358 (Rev.Ed.1982) (well settled that equity has no jurisdiction to remove directors on grounds of mismanagement or neglect). Even where fraud has been demonstrated, courts of equity are unlikely to remove a director. We conclude that under Maine law the exclusive judicial remedy for removal of a director is section 707(6) which permits a corporation to bring an action in equity, if ⅔ of the directors in office so resolve. This conclusion is supported by language of sections 707 and 13–A M.R.S.A. § 715 (1981) expressly limiting the means available to remove officers and directors.

■ Plaintiffs also argue that the Superior Court erred in ruling that it had no jurisdiction to remove Mr. Mahaney from the office of president. Section 715(1) provides that any officer elected by the board may be removed by the board. Section 715(2) provides that an officer elected by the shareholders may be removed only by the shareholders, unless the shareholders have authorized the directors to remove such an officer. The Superior Court did not err in concluding section 715 constitutes the exclusive means of removing the president. A court of equity is not authorized to remove a corporate officer. *See generally* 2 Fletcher, § 358. The Superior Court committed no error in concluding as a matter of law that the demand for judicial removal of Mr. Mahaney as a director and officer of Webber Oil required dismissal.

■ The remaining portion of the relief requested in Counts II, III, and IV; name-

ly, the demand for corporate compensation for malfeasance, requires separate consideration. A shareholder who files a derivative action is required, both by statute and rule, to include particularized allegations within the body of the verified complaint, demonstrating the exhaustion of intra-corporate remedies. The Maine Business Corporation Act provides in relevant part as follows:

> **1.** No action may hereafter be instituted in this State in the right of any domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation, unless each of the following conditions exists:
>
> . . . . .
>
> **B.** The plaintiff alleges in the complaint, with particularity, his efforts to secure from the board of directors such action as he desires, and further alleges that at least 10 days before instituting the action he either informed the corporation or such board of directors in writing of the ultimate facts of such cause of action against each defendant or delivered to the corporation or such board of directors a true copy of the complaint which he proposes to file; or alleges with particularity the reasons why such efforts to secure action from the board of directors would have been futile; ...

13–A M.R.S.A. § 627(1)(B) (1981). The rules of procedure, in relevant part, contain a similar provision:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

M.R.Civ.P. 23A.

 In the present case it is undisputed, and the Superior Court found, that plaintiffs did not inform the Board, in writing, "of the ultimate facts of each cause of action", nor did they deliver to the Board a true copy of the complaint they proposed to file. Plaintiffs rely on a claim of futility to excuse the failure to give notice. The Superior Court ruled that the complaint provided "no detail as to the futility of a demand." The Court observed that the directors had no opportunity to respond to plaintiff's demands prior to suit and noted that in response to the suit, the Board had adopted changes in accounting procedures. Finally, the Court found that the apparently rigid and unfavorable attitude on the part of defendants was the result of the litigation rather than an indication that their response would have been the same if proper demand and notice had been given. In short, the Court found that the necessity of a demand on the corporate directors was not excused by sufficient allegation of futility.

The parties mistakenly urge us to review the Court's ruling in accord with the principles applicable to the review of a grant of summary judgment. Notwithstanding the fact that defendants moved for summary judgment and presented matters outside the pleadings, the issue is addressed to the sound discretion of the trial justice and will ordinarily be determined by the allegations in the verified complaint. The law in this regard is cogently summarized as follows:

> The question whether a demand on the corporate directors is necessary or whether an excuse is sufficient to enable the bringing of a derivative action without the demand is within the sound discretion of the trial court, whose decision

usually will be based on the allegations of the complaint.

It is within the discretion of the court to allow outside materials to be introduced or to hold a hearing on the issue whether the demand on the directors should be excused, although the question should not be turned into a summary judgment proceeding.

C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1831 at 362 (Supp.1985). The special purpose served by the federal counterpart of Rule 23A has been clearly described:

> For lawyers and judges accustomed to the liberalized "notice" pleading of the Federal Rules, F.R.Civ.P. 8, a brief review of the background of Rule 23.1 is in order. Rule 23.1 is not an ordinary, but an exceptional rule of pleading, serving a special purpose, and requiring a different judicial approach. Socially desirable as minority stockholders' actions may be thought to be, *see* Emerson and Latchman, Shareholder Democracy ch. VIII (1954); *Pomerantz v. Clark*, D.Mass., 1951, 101 F.Supp. 341, 346, it is normally the directors, not the stockholders, who conduct the affairs of the company. Hence, to be allowed, sua sponte, to place himself in charge without first affording the directors the opportunity to occupy their normal status, a stockholder must show that his case is exceptional. His initial burden is to demonstrate why the directors are incapable of doing their duty, or as the Court has put it, to show that "the antagonism between the directory and the corporate interest ... be unmistakable." *Delaware & Hudson Co. v. Albany & Susquehanna R.R.*, 1909, 213 U.S. 435, 447, 29 S.Ct. 540, 543, 53 L.Ed. 862. This has long meant, as the Court stated in *Hawes v. Oakland*, 1881, 104 U.S. 450, 26 L.Ed. 827, cited in *Delaware*, that the "cause of failure [to induce corporate action] ... should be stated with particularity." 104 U.S. at 461, 26 L.Ed. 827. *See also Wathen v. Jackson Oil & Refining Co.*, 1915, 235 U.S. 635, 639–640, 35 S.Ct. 225 [226], 59 L.Ed. 395.

*In Re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 (1st Cir.1973) *cert. denied* 417 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973).

Despite the procedural vehicle chosen by the parties, the Superior Court addressed the issue appropriately as a matter within its discretion. The Court did not abuse that discretion in determining that plaintiffs had failed to demonstrate the futility of presenting a request to the directors of Webber Oil.

█ Finally, on this point, plaintiffs argue that the Court erred in denying their motion for leave to amend the complaint to supply further detail on the question of futility. After dismissal was ordered by the Court, plaintiffs sought to amend their complaint and their motion was denied. The substance of the allegations to be added by the proposed amendment was included in the brief plaintiffs submitted in opposition to the motion for summary judgment. It is clear that the allegations were placed before the Court prior to the Court's decision. Under these circumstances, we conclude that the Court considered all allegations in exercising its discretion, and thus, no harm resulted from the denial of the motion to amend. An examination of the opinion of the Court makes it abundantly clear that the Court did not confine its consideration merely to the formal allegations of the complaint. The request for corporate compensation contained in Counts II, III, and IV were appropriately dismissed on the basis of Rule 23A and section 627.[2]

### V.

█ In Count V of their complaint, plaintiffs allege that Mr. Fuller and Ms.

---

**2.** Because the statute is similar to the rule and speaks only to a requirement of allegation, we interpret it to have a similar effect.

Harnum, in their capacities as trustees of the AEW Trust, breached their duty to Mr. Webber, as a beneficiary of the Trust, by failing to vote the trust shares in favor of the removal of Mr. Mahaney and for failing to cause the corporation to sue Mr. Mahaney. The relief requested under this Count included an order enjoining the two named trustees from voting the shares of the trust in favor of maintaining Mr. Mahaney as president, director, or employee of Webber Oil in addition to a surcharge for any damage resulting to the beneficiaries. In dismissing Count V for failure to state a claim, the Superior Court stated that "Count V is so intertwined with the derivative action that it cannot stand alone as a claim for breach of duty as trustee. It will be dismissed for failure to state a claim." In addition to the reason given by the Superior Court, defendants assert that Count V was properly dismissed because plaintiffs failed to comply with demand requirements that exist when the beneficiaries of a trust bring suit to compel the trustees to take a particular action. *See* 90 C.J.S. Trusts § 452(d) (1955).

Unlike Counts II and III, that are in the nature of a shareholder's derivative suit, Count V does not seek judicial removal of Mr. Mahaney, but instead asks the Court to compel the trustees to vote the shares they hold in the best interest of the beneficiaries. We do not agree, therefore, that Count V is unable to stand as an independent claim.

The alternative offered by defendants for upholding the dismissal ordered by the Superior Court presents numerous problems. Although this Court has never expressly held that demand is a condition precedent to an action against a trustee, such a rule does appear to apply generally. *See, e.g., Brent v. Maryland,* 18 Wall 430, 85 U.S. 430, 433, 21 L.Ed. 777 (1873). It is reasonable to expect that a trustee should not be subjected to suit without first having notice of the duty he is required to perform and an opportunity for performance. Arguably, this Court has at least

tacitly recognized the existence of such a rule. *See Coburn v. Page,* 105 Me. 458, 468, 74 A. 1026, 1030 (1909) (noting that demand was duly made on the wrongdoer). Defendants argue factually that there has been no demand in this case and that it is inconceivable that the two named trustees could have breached their obligations. Plaintiff Danville Webber is also a trustee of the AEW Trust and unanimity among the trustees is required in order for the stock to be voted. Defendants allege that all relevant actions taken by the trustees have been unanimous and thus, Mr. Webber should not be heard to complain. Because of the procedural posture of this Count, however, we are not persuaded that we should enter into an analysis of the facts. The ground specified by the Superior Court for dismissing Count V is in error. We are not persuaded that the Superior Court would have dismissed the Count for failure to specifically plead the performance of a condition precedent, *see* M.R. Civ.P. 9(c), without first allowing an opportunity for amendment. Accordingly, we vacate the dismissal of Count V and the Superior Court's Order of March 11, 1985 ordering the AEW Trust to reimburse Mr. Fuller for his counsel fees and expenses.

### VI.

■ Count VI of the complaint alleges that Mr. Mahaney, Ms. Mahaney, and Ms. Harnum, as majority shareholders of Webber Oil, breached their fiduciary duties to plaintiffs and to Mr. Webber specifically by reducing Mr. Webber's salary as treasurer and disproportionately reducing his dividend payments. The complaint does not seek a recovery on behalf of the corporation. The Superior Court's November 27, 1984 Order stated that it dismissed "all remaining claims", but the November 27 Order did not expressly refer to Count VI, nor did defendants' motion for summary judgment on plaintiffs' complaint refer to Count VI. In an Order dated February 4, 1984, the Superior Court explained that it had intended to dismiss Count VI despite the fact that neither the Order nor the

Opinion referred to Count VI. The Superior Court stated that Count VI was an ineffective attempt "to relabel the derivative action as something else, and to create a claim outside the statute. No allegations are included which would permit an independent action and dismissal was in order." In the same February 4 Order, the Superior Court granted judgment to Webber Oil on the injunction bond.

As an initial matter, without deciding whether the Superior Court had the authority to order, *sua sponte*, the dismissal of Count VI, we conclude that any purported dismissal of Count VI was ineffective before the February 4 Order explicitly referring to Count VI. Moreover, the Superior Court erred in concluding that Count VI should be dismissed. The allegations in Count VI set forth a claim entirely independent of the derivative action to remove Mr. Mahaney as an officer and director. Although the allegations of wrongdoing in Count VI may arise from the same factual matrix as that underlying the other Counts of the complaint, Count VI advances a legal theory different from the other Counts.

█ Our decision that Count VI was improperly dismissed requires reversal of the Superior Court's entry of judgment in favor of Webber Oil on the injunction bond. Under M.R.Civ.P. 65(c), the bond is given as security in the event that costs and damages may be suffered by a party who has been wrongfully enjoined or restrained. Because Count VI remains alive, we cannot say that Webber Oil was wrongfully enjoined. On the other hand, our conclusion that Count VI was improperly dismissed does not require us to reinstate the injunction, and we decline to do so.

## VII.

Finally, plaintiffs assert that the Superior Court erred in awarding the costs of taking depositions to defendants. Because we vacate the judgment of the Court in part we also vacate the award of costs so that it may be considered when the action is fully adjudicated.

The entry is:

Motion to dismiss appeal denied.

Judgment for defendants on Count I affirmed.

Judgment dismissing Counts II, III, and IV affirmed.

Judgment for defendants dismissing Counts V and VI vacated and remanded for further proceedings consistent with the opinion herein.

Judgment for Webber Oil on the injunction bond vacated.

Judgment for defendants denying restoration of the injunction affirmed.

Judgment for Mr. Fuller awarding counsel fees vacated.

All concurring.