**In re MERRILL LYNCH INVEST-MENT MANAGEMENT FUNDS SECURITIES LITIGATION**

No. 04 CIV. 3759(RO).

United States District Court,
S.D. New York.

June 12, 2006.

234

Jerome M. Congress, Milberg Weiss Bershad & Shulman LLP, New York City, for lead plaintiffs Mary Donnelly, Terrence Donnelly, Jack Hadley, William R. Leitch, William Martinez, Robert McLaren, Kenneth L. & Carolyn Nicoles JTWROS, Kenneth A. Parker, Emil Pugliese, R.J. Rilee,

Sr., Harold Rubenstein, TTE for Sarfity Corp. Pension Plan and Trust, Albert Said, Alan Schuetz, Elena & Marc Wagner JTWROS, and John R. Williams.

Mark Holland, Clifford Chance U.S. LLP, New York City, for defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce Fenner & Smith Incorporated, Merrill Lynch Investment Managers, L.P., Merrill Lynch Investment Management Funds.

Andrew J. Levander, Dechert LLP, New York City, for director defendants David O. Beim, James H. Bodurtha, Donald W. Burton, M. Colyer Crum, James T. Flynn, Ronald W. Forbes, Todd Goodwin, Joc Grills, Laurie Simon Hodrick, George W. Holbrook, Jr., W. Carl Kester, Herbert I. London, Cynthia A. Montgomery, Andre F. Perold, Roberta Cooper Ramo, Karen P. Robards, Kevin A. Ryan, Robert S. Salomon, Jr, Roscoe S. Suddarth, Stephen B. Swensrud, David H. Walsh, Fred G Weiss, Richard R. West, and Edward D. Zinbarg.

Marvin E. Barkin, Tampa, FL, and Thomas J. Lilly, Jr., O'Donnell, Schwartz, Glanstein & Lilly LLP, Garden City, NY, for defendant Merrill Lynch Funds.

Daniel McLaughlin, Sidley Austin Brown & Wood, New York City, for defendants Merrill, Lynch, Pierce, Fenner & Smith and Merrill Lynch & Co.

*OPINION & ORDER*

OWEN, District Judge.

Plaintiffs,[1] investors in several Merrill Lynch mutual funds,[2] assert claims under

1. Lead plaintiffs are Mary Donnelly, Terrence Donnelly, Jack Hadley, William R. Leitch, William Martinez, Robert McLaren, Kenneth L. & Carolyn Nicoles JTWROS, Kenneth A. Parker, Emil Pugliese, R.J. Rilee, Sr., Harold Rubenstein, TTE for Sarfity Corp. Pension Plan and Trust, Albert Said, Alan Schuetz, Elena & Marc Wagner JTWROS, and John R. Williams. Michael Bukict, Dawn Maniskas, William Martinez, Kenneth A. Parker, R.J. Rilee Sr., Albert Said, John R. Williams are the coordinating lead plaintiffs.

2. The defendants are Merrill Lynch & Co., Inc. ("ML & Co."), the parent company; Merrill Lynch, Pierce, Fenner & Smith Inc.

the Securities Act of 1933, 15 U.S.C. § 77a et seq., the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., the Investment Company Act of 1940, 15 U.S.C. § 80a–1 *et seq.* ("ICA"), the Investment Advisors Act of 1940, 15 U.S.C. § 80b–1 *et seq.* ("IAA"), and a state law breach of fiduciary duty. Plaintiffs seek a class action under Federal Rule of Civil Procedure 23(a) and (b)(3), on behalf of all persons or entities who, between May 20, 1999 through May 17, 2004, inclusive, held shares or like interest in funds belonging to the Merrill Lynch, BlackRock, Dreyfus, Hartford, Lord Abbett, or PIMCO mutual fund families (the so-called "the Shelf Space Funds",[3] *see* Cons.Am. Compl. Ex. A), and who were damaged thereby. A class has not been certified. Before me are two motions by all defendants to dismiss the Consolidated Amended Complaint.

Plaintiffs allege that defendants—related companies engaged, either directly or indirectly, in the sale of securities—have violated the securities laws and their state law fiduciary duties by failing to properly disclose the incentive structure that caused Merrill Lynch "Financial Advisors", the retail brokers who sell mutual fund products to investors, to improperly "steer" and "push" class members into the Shelf Space Funds. Once invested in the funds, the plaintiffs were charged "undisclosed" and "excessive" fees, which were in turn used to "steer" more investors into the funds. Plaintiffs allege that Merrill Lynch engaged in these "shelf space programs" because it received payments from the Shelf Space funds "in exchange for ... placing its clients into those [f]unds [and] collected fees for managing and advising certain of the Shelf Space Funds under its control which were calculated as a percentage of funds under management, and, therefore, tended to increase as the number of investors grew." The payments, it is alleged, took the form of "directed brokerage," "soft dollars," and "revenue sharing."[4] Plaintiffs allege that "Shelf Space Funds would pay Merrill Lynch an extra sixteen dollars for each client Merrill Lynch pushed into a Shelf Space Fund [and] an additional 25 basis points[5] to Merrill Lynch for the assets under management." (Cons.Am.Compl.¶ 63.) Other incentives included the tying of retail branch manager and Financial Advisor

---

3. "Shelf space" or "revenue sharing" arrangements consist of payments made by a ("MLPF & S"), the broker-dealer; Merrill Lynch Investment Managers, L.P. ("MLIM"), Fund Asset Management LP ("FAM"), Merrill Lynch Investment Managers International Limited ("MLIMIL"), Merrill Lynch Asset Management Group, and Merrill Lynch Asset Management U.K. Limited, the investment advisers; FAM Distributors, Inc., the Merrill Lynch fund distributor; Princeton Services, the general partner of FAM and MLIM; and, as nominal defendants, the Merrill Lynch Funds. (*See* Cons.Am. Compl. Ex. D.) While the Consolidated Amended Complaint also contains several claims against twenty-five directors of the Merrill Lynch Funds, those claims were dismissed with prejudice, upon a stipulation among the parties on October 18, 2005, following the argument here.

3. "Shelf space" or "revenue sharing" arrangements consist of payments made by a fund to a retail broker, in exchange for the retail broker's preferential marketing of those funds to its customers. As described *infra,* the payments can take various forms.

4. *Directed brokerage:* a mutual fund allows a brokerage firm to execute trades in the fund's underlying portfolio and earn the commissions thereon, in exchange for the brokerage firm selling shares of the fund to its clients.

*Revenue sharing:* portion of mutual fund fees transferred to brokerage firm by a fund.

*Soft dollars:* commissions paid to brokerage firms for trades in the mutual fund portfolio in excess of the actual execution price of the trades, for services such as investment research.

5. A basis point is 1/100th of a percentage point.

compensation to the sale of Shelf Space shares. Plaintiffs also allege that "Merrill Lynch upper level management would threaten demotion and/or termination of employees who had failed to sell enough Shelf Space Funds." (Cons.Am. Compl.¶ 69.)

Of course, the funds had written marketing plans in accordance with Securities and Exchange Commission Rule 12b–1, 17 C.F.R. § 270.12b–1 (2004), but plaintiffs contend that the Rule 12b–1 fees, though absolutely known to them at the time of purchase, were not to their benefit, because "economies of scale" created by increases in the number of investors, and therefore in funds under management, were not passed onto investors in the funds. Defendants also did not reduce the 12b–1 fees as the size of the funds increased.

The Consolidated Amended Class Action Complaint contains eleven active Counts.[6] Plaintiffs assert the claims on behalf of asserted "subclasses" of shareholder: the "Purchasers Subclass", the members of which purchased or sold shares during the class period; and the "Holders Subclass", the members of which did not purchase or sell shares during the class period, but held shares throughout.[7]

Also, plaintiffs, who do not claim to have owned shares in mutual funds other than the Merrill Lynch funds, now attempt to expand the class to assert claims on behalf of shareholders of all of the Shelf Space Funds. This is denied. Plaintiffs do not have standing to represent these shareholders. *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 41 (D.Mass.2003); *see also In re Alliancebernstein Mut. Fund Excessive Fee Litigation*, Slip Copy, 2005 WL 2677753, *8–*10 (S.D.N.Y. Oct. 19, 2005).[8]

Defendants move to dismiss the above with prejudice pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4 *et seq.*, and Rules 9(b), 12(b)(1), 12(b)(6), and 23.1 of the Federal Rules of Civil Procedure. On a motion to

---

**6.** Count XII, which was asserted only against the director defendants, has been dismissed.

**7.** Count I is asserted on behalf of the Purchasers Subclass against MLPF & S under Section 12(A)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2). Count II is asserted on behalf of the Purchasers Subclass against ML & Co. under Section 15 of the Securities Act, 15 U.S.C. § 77o. Counts III and IV are asserted on behalf of the Purchasers Subclass against MLPF & S under Section 10(b) of the Exchange Act, 15 U.S.C.A. § 78j(b), and Rule 10b–5 promulgated thereunder. Count V is asserted on behalf of the Purchasers Subclass against ML & Co. under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Count VI is asserted on behalf of the Holder Subclass against the investment adviser defendants under Section 34(b) of the ICA, 15 U.S.C. § 80a–33(b). Counts VII and VIII are asserted on behalf of the Holder Subclass against the distributor and investment adviser defendants under Sections 36(a) and (b) of the ICA, 15 U.S.C. § 80a–35(a), (b). Count IX is asserted on behalf of the Holder Subclass against ML & Co. and Princeton Services, as control persons of the distributor and investment adviser defendants, under Section 48(a) of the ICA. Count X is asserted derivatively on behalf of the funds against the investment advisers under Section 215 of the IAA for alleged violations of Section 206 thereof, 15 U.S.C. § 80b–6, 15. Count XI is asserted on behalf of the Holders Subclass against the investment advisers for breach of fiduciary duty.

**8.** The instant case is distinguishable from cases cited by plaintiffs where, at the class certification stage, class plaintiffs have been able to represent shareholders in the same fund family, *see, e.g., Dreyfus Aggressive Growth Mutual Fund Litig.*, No. 98 Civ. 4318, 2000 WL 1357509 (S.D.N.Y. Sept. 19, 2000), without owning shares in all funds within the family. Here, the non-Merrill Lynch fund shares were issued, advised, and managed by non-parties to this action, under different offering prospectuses. And in any case, there is more recent countervailing authority in this district. *See In re Alliancebernstein*, 2005 WL 2677753, at *8–*10.

dismiss, the Court must accept as true all material factual allegations in the complaint, *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l, Ltd.*, 968 F.2d 196, 198 (2d Cir.1992), and may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief," *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir.1996); *see Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In addition to the facts set forth in the complaint, the Court may also consider documents attached thereto and/or incorporated by reference therein, *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998), as well as matters of public record, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998), *cert. denied*, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999).

Because Plaintiffs' Securities Act and Exchange Act claims have several elements in common, I address those elements together. Plaintiffs allege that the broker-dealer defendant, MLPF & S, violated Section 12(a)(2) of the Securities Act by selling Merrill Lynch fund shares by means of misleading prospectuses.

Section 12(a)(2) provides:

Any person who ... offers or sells a security ...by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission ... shall be liable ... to the person purchasing such security from him.

15 U.S.C. ¶ 77l.

Similarly, plaintiffs also allege that the broker-dealer defendant violated Section 10(b) of the Exchange Act, and Rule 10b–5 promulgated thereunder, by failing to disclose material facts about the "shelf space" arrangements. To state a cause of action thereunder, plaintiffs must allege that defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *In re IBM Corp. Sec. Litig.*, 163 F.3d 102 (2d Cir.1998); 17 C.F.R. § 240.10b–5(b).[9] These elements are substantively the same as those required under Section 12(a)(2) of the Securities Act, though Section 12(a)(2) does not require reliance.

For an omission to be actionable under the above provisions of Securities Act or the Exchange Act, it must involve information that the defendant had a duty to disclose. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir.1993); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F.Supp.2d 243, 248

---

9. Rule 10b–5(b), cited in Count III, makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Rules 10b–5(a) and (c), which plaintiffs cite as a separate cause of action in Count IV, make it unlawful "[t]o employ any device, scheme, or artifice to defraud ... [or][t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." Plaintiffs must prove all of the elements of a 10b–5 claim, as described in the text *supra*, when proceeding under Rules 10b–5(a) and (c). *See In re Towers Financial Corp. Noteholders Litig.*, No. 93–Civ.–0810, 1995 WL 571888, *16 (S.D.N.Y. Sept. 20, 1995).

(S.D.N.Y.2003). A duty to disclose arises either (1) through an explicit regulatory or statutory requirement, or (2) when the omitted information is otherwise "material," or in other words, "when disclosure is necessary to make prior statements not misleading." *See In re Time Warner,* 9 F.3d at 268. "To be material, the information need not be such that a reasonable investor would necessarily change his investment decision based on the information, as long as a reasonable investor would have viewed it as significantly altering the 'total mix' of information available." *SEC v. Mayhew,* 121 F.3d 44, 52 (2d Cir. 1997) (*citing TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

■ I conclude that current law and SEC regulations impose no duty on the defendants that the funds' offering prospectuses disclose more than they did. *See In re Morgan Stanely and Van Kampen Mut. Fund Sec. Litig.,* No. 03 Civ. 8208(RO), 2006 WL 1008138, (S.D.N.Y. April 18, 2006); *Benzon v. Morgan Stanley Dist., Inc.,* 420 F.3d 598, 608 (6th Cir. 2005). Furthermore, plaintiffs allege no material omission, from the offering prospectuses or otherwise. Defendants disclosed the fees and commissions charged to shareholders. The precise allocation of those fees is not material information under the securities laws. *See Castillo v. Dean Witter Discover & Co.,* No. 97 Civ. 1272, 1998 WL 342050 (S.D.N.Y. June 25, 1998). Plaintiffs, inasmuch as they even describe any payments made to broker dealers by the Funds, describe only minimal, immaterial payments. *See In re Morgan Stanely,* 2006 WL 1008138, at \*8.

■ Under Section 10(b) of the Securities Act and Rule 10b–5, plaintiffs must also plead "loss causation"—that the acts or omissions of the defendants caused the losses for which they seek to recover, *see* 15 U.S.C.A. § 78u–4(b)(4), and are not merely "but for" causes of the losses. *See Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1495 (2d Cir.1992). To plead proximate causation, plaintiffs must allege that the target misstatements or omissions were "the cause of the transaction's turning out to be a losing one." *Id.* (quoting *Bastian v. Petren Resources Corp.,* 892 F.2d 680, 684 (7th Cir.1990)). Under Section 12 of the Exchange Act, failure to plead loss causation is an affirmative defense; when, however, "it is apparent from the face of the complaint that the plaintiff cannot recover her alleged losses, dismissal of the complaint pursuant to Fed. R.Civ.P. 12(b)(6) is proper." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 289 F.Supp.2d 429, 437 (S.D.N.Y. 2003).

Such is the case here. It is apparent on the face of the complaint that plaintiffs have not pleaded losses, let alone a loss fairly traceable to defendants. The fees charged to shareholders, which were disclosed, do not constitute a "loss", and plaintiffs have not tied the investment performance of any fund to the alleged misrepresentations and omissions. *See In re Morgan Stanely,* 2006 WL 1008138, at \*8–10; *Castillo,* 1998 WL 342050 (S.D.N.Y. 1998). Plaintiffs offer no way the alleged threats and incentives to brokers, or the "shelf space" payments made by the funds, caused them a loss. Plaintiffs allege that they "received a return on their investment that was substantially less than the return on investment that they would have received had they invested the same dollars in a comparable fund," (Cons.Am. Compl.¶ 76), but this is likewise no basis for recovery, because a shareholder cannot recover for "damages" based on hypothetical investments he did not make. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Plaintiffs' Securities Act and Ex-

change Act claims are therefore also dismissed for failure to plead loss causation.

■ Plaintiffs' Exchange Act claims fail for the additional reason that the pleadings are devoid of the specificity required by the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." To state a claim under Section 10(b), a plaintiff "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127–28 (2d Cir.1994). Similarly, in what is essentially cumulative of the Second Circuit's longstanding pleading requirement, the PSLRA requires that to state a fraud claim, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."

■ When a claim under Section 12(a)(2) Securities Act is "premised on averments of fraud," the heightened pleading requirements of Rule 9(b) apply. *See Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004). Here, plaintiffs attempt to avoid these requirements by stating that in connection with their Securities Act claims, they "expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless conduct." But plaintiffs go on to allege, for example, that "MLPF & S failed to disclose the directed brokerage and other improper inducements," "caused to be issued ... the Prospectuses that failed to disclose that fees and commissions from the Shelf Space Funds would be used to pay brokers for directing investors into the

Shelf Space Funds," and omitted from the prospectuses the "material facts ... that the investment advisers authorized payment from fund assets of excessive commissions ... in breach of their fiduciary duties" and "payments made pursuant to the [12b–1] plans were in violation of Section 12 of the [ICA]." Plaintiffs disclaimers are unavailing, because plaintiffs' allegations clearly are of fraud, not negligence. Therefore, the requirements of Rule 9(b) apply to both the Securities Act and Exchange Act claims.

Plaintiffs have not identified a single statement, by any broker to an investor or otherwise, which is misleading. For some inexplicable reason, plaintiffs do not even cite in the complaint the offering prospectus from any Merrill Lynch fund. Plaintiffs instead allege that certain passages of the 2003 Hartford Mutual Funds, Inc. Statement of Additional information—a document not issued by any defendant here for a fund not owned by any plaintiff—are misleading and are "identical in substance" to the SAIs of the Merrill Lynch funds. I do not accept this. It is lost on me how citing this SAI—and no other—is supposed to constitute the adequate pleading of a material omission. Because plaintiffs cite no prospectus or SAI actually at issue in this case, nor cite any specific statement alleged to be misleading, they do not meet the particularity requirement of Rule 9(b).

For the several reasons stated above, Counts I, III, and IV are dismissed. There being no underlying liability, the control person liability claims, II and V, are also dismissed. Defendants' other arguments for dismissing these claims need not be addressed.

■ Counts VI, VII, and IX, Plaintiffs' claims under Sections 34(b), 36(a), and 48(a) of the ICA fail, because there is no private right of action under these provi-

sions. *See, e.g., In re Eaton Vance Mutual Funds Fee Litig.*, 380 F.Supp.2d 222 (S.D.N.Y.2005).

■ Plaintiffs allege that the distributor and investment adviser defendants violated Section 36(b) of the ICA by charging "inflated" and "excessive" marketing and management fees. Section 36(b), which does provide for a private right of action, states that a suit may be asserted against "the investment advisor of a registered investment company" for breach of fiduciary duty "in respect of ... compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person" by "a security holder of such registered investment company on behalf of such company." The Second Circuit held in *Gartenberg* that "[t]o be guilty of a violation of § 36(b) ... the adviser-manager must charge a fee that is *so disproportionately large* that it bears *no reasonable relationship* to the services rendered and *could not have been the product of arm's-length bargaining.*" *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir.1982) *(emphasis added)*. A court should consider all pertinent facts, including:

> (1) the nature and quality of the services provided by the advisers to the shareholders; (2) the profitability of the mutual fund to the advisor-manager, (3) "fall-out" benefits; (4) the economies of scale achieved by the mutual fund and whether such savings were passed on to the shareholders; (5) comparative fee structures with other similar funds; and (6) the independence and conscientiousness of the mutual fund's outside trustees.

*Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, No. 03 Civ. 5710, 2004 WL 1065533, *1 (S.D.N.Y. May 12, 2004) (citing *Gartenberg* ). At the pleading stage, plaintiffs must allege facts that, if true, would meet the Gartenberg factors. *See, e.g., Krantz v. Prudential Invs. Fund. Mgmt., LLC*, 305 F.3d 140, 143 (3d Cir. 2002); *Yampolsky*, 2004 WL 1065533 at *2.

The Consolidated Amended Complaint does not contain "factual allegations as to the *actual* fee negotiations or management and distribution services rendered by *these* defendants." *Yampolsky*, 2004 WL 1065533, at *2. Plaintiffs do not allege sufficient facts to demonstrate "a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered." Plaintiffs merely state in a conclusory fashion, without any factual support, that the fees were "inflated" and "excessive." Even under the liberal pleading standard of Rule 8 of the Federal Rules of Civil procedure, this is not an adequate § 36(b) pleading. Accordingly, Count VIII is dismissed.

■ Plaintiffs bring Count X derivatively on behalf of the funds under the IAA. A derivative action complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiffs failure to obtain the action or for not making the effort." Fed. R.Civ.P. 23.1. The demand requirements are determined in each case by the laws of that fund's state of incorporation. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98–101, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). Plaintiffs do not allege to have made a demand on the board of any fund. The funds in which named plaintiffs held shares were incorporated in Maryland. Other of the Merrill Lynch funds were incorporated in Maine and Massachusetts. Recognizing the split of authority on whether a plaintiff can bring a class action on behalf of shareholders of funds in which

the plaintiff is not invested, *see supra,* I consider the demand futility requirements of all three states.

Under Maryland law, demand futility is a "very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." *Werbowsky v. Collomb,* 362 Md. 581, 620, 766 A.2d 123 (2001). Under Massachusetts law, demand may only be excused if either "a majority of directors are alleged to have participated in wrongdoing" or "are otherwise interested." *Harhen v. Brown,* 431 Mass. 838, 844, 730 N.E.2d 859 (2000). An "interested" director must either be "a party to the transaction," have a "business, financial, or familial relationship with a party to the transaction," have "a material pecuniary interest in the transaction or conduct (other than usual and customary directors' fees and benefits)," or be "subject to a controlling influence by a party to the transaction or conduct or a person who has a material pecuniary interest in the transaction or conduct." *Id.* at 843 n. 5, 730 N.E.2d 859 (citing 1 ALI Principles of Corporate Governance: Analysis and Recommendations § 1.23 (1994)). Similarly, Maine law requires that a plaintiff state "with particularity the reasons why ... efforts to secure action from the board of directors would have been futile." *Webber v. Webber Oil Co.,* 495 A.2d 1215 (Me.1985). Before a shareholder can "be allowed, sua sponte, to place himself in charge without first affording the directors the opportunity to occupy their normal status, [he] must show that his case is exceptional. His initial burden is to dem-

onstrate why the directors are incapable of doing their duty, or as the Court has put it, to show that 'the antagonism between the directory and the corporate interest ... be unmistakable.'" *Id.* at 1223 (citation omitted).

Plaintiffs have not met the demand futility requirements of any of these states. They do not allege particularized facts that would show how a given director was unable to respond to a demand in good faith. The mere fact that a director receives compensation or was somehow involved in the allegedly wrongful behavior does not excuse demand. *See, e.g., Scalisi v. Fund Asset Mgmt. LP,* 380 F.3d 133, 140 (2d Cir.2004). Accordingly, plaintiffs IAA claim is dismissed.

In accordance with all the above, defendants motions to dismiss plaintiffs' claims under the Securities Act, the Exchange Act, the ICA, and the IAA are granted. I decline to exercise supplemental jurisdiction over the remaining state law claim of breach of fiduciary duty.

So Ordered.